## Joseph Floyd *vs.* William Quinn.

| 24 | 147|
|e24 | 166|.

### Providence—May 2, 1902.

Present : Stiness, C. J., Tillinghast, Wilbur, Rogers, Douglas, Dubois, and Blodgett, JJ.

(1) *Constitutional Law. Courts. Jurisdiction. Quorum. Judiciary Act. Appellate and Common Pleas Divisions. New Trial.*

Where a certain jurisdiction is given by the constitution to a court, it cannot be taken away or diminished by any legislation; but where a constitution expressly leaves the details and extent of jurisdiction to the legislature, as is done by the constitution of Rhode Island, article X, sections 1, 2, there is no warrant for holding that it is limited at all, other than by the general implication that necessary jurisdiction must be reserved to the Supreme Court.

Cons. R. I. Art. X. § 2, providing that "The several courts shall have such jurisdiction as may from time to time be prescribed by law," leaves the regulation of jurisdiction in all courts in the General Assembly.

Cons. R. I. Art. XIV, § 3, providing "The Supreme Court established by this constitution shall have the same jurisdiction as the Supreme Judicial Court at present established, and shall have jurisdiction of all causes which may be appealed to or pending in the same ; and shall be held at the same times and places, and in each county, as the present Supreme Judicial Court, until otherwise prescribed by the general assembly," conferred a fixed jurisdiction upon the Supreme Court only until otherwise prescribed by the General Assembly.

As article X of the constitution prescribes neither the number of judges to constitute the court nor the number necessary for a quorum, and as section two of said article empowers the legislature to prescribe the jurisdiction of the courts by law, it follows that neither all the judges nor a majority are required to constitute a quorum, but the legislature is empowered to give full jurisdiction to a minority to act for the court.

The division of jurisdiction made in the judiciary act of 1893 is not repugnant to either article X or to article XIV of the constitution of Rhode Island, since the act does not operate to establish a number of Supreme Courts, but one court, dispatching different classes of judicial business by its different members at the same time.

The power given by the judiciary act to the chief justice to designate the justices in the various divisions of the court is not repugnant to the constitution, since if the legislature has the right to confer this power it is a question of policy, not of constitutional power, upon whom it shall be conferred.

Jurisdiction in all appellate cases is not by the constitution necessarily vested in the Supreme Court as one body, neither does the court necessarily sit as a whole in all cases ; but its jurisdiction may be separated into parts, which parts may be entrusted to less than the whole, or a

majority of the body; and the distribution thereof is within the power vested in the legislature by the constitution.

The right to grant new trials has never been wholly vested in the Supreme Court, and has never been required to be exercised by a full court.

TRESPASS ON THE CASE. Heard on motion to dismiss petition for new trial, and motion denied.

STINESS, C. J. The plaintiff, who has recovered a verdict against the defendant in the Common Pleas Division, petitions for a new trial upon the ground of erroneous rulings and inadequacy of damages.

The petition was filed in the Appellate Division of the Supreme Court, pursuant to Gen. Laws cap. 251, § 3, and the defendant has filed a motion to dismiss it upon the alleged ground that, by the constitution of the State, the exclusive jurisdiction to grant new trials for the causes contained in the plaintiff's petition is vested in the Supreme Court, established by the constitution; a court different from and superior to the Appellate Division of the Supreme Court; which Division cannot constitutionally exercise the jurisdiction of granting new trials.

The number of judges of the Supreme Court is now fixed at seven, and Gen. Laws cap. 221 provide that there shall be an Appellate Division and a Common Pleas Division of the court.

The Appellate Division, as the name implies, has the general supervisory jurisdiction of a Supreme Court, and the Common Pleas Division has original jurisdiction, civil and criminal, of all cases tried to a jury. The former division consists of four judges and the latter of three.

Constitutional questions are required to be heard before the full court of seven, when practicable.

The chief justice, or in his absence the senior associate justice, with two others to be assigned by him, are required to sit in the Appellate Division in petitions for new trials, equity and other proceedings, and in all other matters one judge is a quorum.

This distribution of duties and jurisdiction is alleged by the defendant to be unconstitutional.

The constitution, article X, sections 1, 2, says :

"The judicial power of the state shall be vested in one supreme court, and in such inferior courts as the general assembly may, from time to time, ordain and establish.

"SEC. 2.  The several courts shall have such jurisdiction as may from time to time be prescribed by law.  Chancery powers may be conferred on the supreme court, but on no other court to any greater extent than is now provided by law."

The first section is the same as the corresponding section of the constitution of the United States ; but the second section expresses a legislative power of regulating jurisdiction which is somewhat broader than that of the federal constitution, in which certain original jurisdiction is given to the Supreme Court of the United States.  In both the vesting of the judicial power is plenary and exclusive ; but in ours the mode and details of exercising the power is left wholly to legislation.

A constitution does not usually deal with details.  Numbers of judges, quorums, terms of court, regulation of process, attendance of juries, distribution of jurisdiction, and numerous incidental matters are frequently provided for by law. Hence nothing is determined by our constitution beyond the vesting of complete judicial power in the courts and the requirement that there shall be one Supreme Court.

Taken in the order of a convenient review, the defendant's first proposition is that the constitution, by creating a Supreme Court, thereby conferred upon that court exclusive jurisdiction, *ex vi termini*, to grant new trials, which is the power brought in question in this case, and that this power cannot be taken away or diminished.

We do not question that in establishing a Supreme Court there is something in a name.  The provision that there shall be a Supreme Court clearly implies that it is not to be subordinate to any other court or tribunal, and that it is to exercise the highest of the judicial functions.  Of course it must

issue prerogative writs, make its own rules, and control its own business. It is to be a court of last resort.

It does not follow, however, that all cases can go to that court, by appeal or petition, and that there can be no final decision except by that court, if a party desires it. This is apparent, both from principle and practice.

There can be no claim that the vesting of jurisdiction in the Supreme Court, in our constitution, is more imperative than that in the federal constitution, since the vesting clauses are substantially alike and the clause relating to legislative regulation is broader in ours than in the latter.

As to the federal constitution, Hamilton said in the Federalist, No. LXXXI, interpreting this clause:

" The power of constituting inferior courts is evidently calculated to obviate the necessity of having recourse to the Supreme Court in every case of federal cognizance."

" I should consider everything calculated to give, in practice, an unrestrained course to appeal, as a source of public and private inconvenience."

Chief Justice Marshall, of the United States Supreme Court, a member of the convention to revise the constitution of Virginia in 1829, spoke upon the words relating to the courts, including a court of appeals: " The jurisdiction of these tribunals shall be regulated by law," where our constitution says: " The several courts shall have such jurisdiction as may be prescribed by law," as follows:

" The article, as it now stands, leaves the whole subject open to the legislature. They may limit or abridge the jurisdiction of all the courts as they please. If the legislature choose to give them all chancery jurisdiction, or, if they shall think fit, to limit their jurisdiction in common law cases to a specific sum, the legislature can do so. The whole subject of jurisdiction is submitted absolutely and without qualification to the power of the legislature." See also *Sharpe* v. *Robertson*, 5 Gratt. 518 (603, 604, 606, 626).

In *Chisholm* v. *Georgia*, 2 Dall. 419 (1793) Iredell, J., said: " The attorney general has suggested a construction that I never heard of before, nor can I now consider it

grounded on any solid foundation, though it appeared to me to be the basis of the attorney-general's argument. His construction I take to be this—that the moment a Supreme Court is formed, it is to exercise all the judicial power vested in it by the constitution by its own authority, whether the legislature has prescribed methods or not.

"My conception of the constitution is entirely different. I conceive that all the courts of the United States must receive, not merely their organization as to the number of judges of which they are to consist, but all their authority as to the manner of their proceeding, from the legislature only. This appears to me to be one of those cases, with many others, in which an article of the constitution cannot be effectuated without the intervention of legislative authority."

If these words are applicable to the constitution of the United States, much more must they be true of our constitution which leaves the jurisdiction itself to legislation.

With these citations, it cannot be open to question that jurisdiction may be regulated by law. Such regulation implies that jurisdiction may be changed, and change implies that it may be taken from one court and put into another.

As to practice, the Congress of the United States and the legislature of this State have uniformly limited and changed the jurisdiction of the Supreme Court, by committing a part of it to inferior courts, and this has been done without question of its constitutionality. Thus, at the first session of the first congress in 1789, when the judiciary act was passed, the appellate jurisdiction of the Supreme Court was limited to cases where the matter in dispute exceeded the sum or value of two thousand dollars; Acts, cap. XX, § 22; and by section 17 all the courts were empowered to grant new trials, in cases where there had been a trial, for reasons for which new trials had usually been granted in courts of law.

Other limitations upon the exercise of full appellate jurisdiction might be cited, both in federal and State cases, notably the jurisdiction of circuit courts of appeals of the United States, but it is not necessary to do so. It is beyond question that *all* jurisdiction on appeals does not necessarily go to

the Supreme Court. In the instances already cited, complete jurisdiction has been diminished; and the right to diminish, and, as to petitions for a new trial, to withhold it in some cases altogether, has been recognized ever since the adoption of the federal constitution. A careful analysis of the numerous cases cited by the defendant to the contrary shows that, almost without exception, they depend upon special constitutional provisions which have been infringed by a legislative act. In such a case there can be no doubt. When constitutional provisions are clear they are imperative, both upon the legislator and the courts. When they are not. clear they must be construed. But when there are no express provisions upon a subject, they must be left to legislation. (1) If a certain jurisdiction is given by the constitution to a court, it cannot be taken away or diminished by any legislation; but where a constitution expressly leaves the details and extent of jurisdiction to the legislature, as in our constitution, there is no warrant for holding that it is limited at all other than by the general implication that necessary jurisdiction must be reserved to the Supreme Court. If it be said that this leaves the jurisdiction to be determined by the legislature, we can only reply that such is the exact provision of the constitution. The legislature and judiciary are co-ordinate branches of the government, but both are created by the people in the constitution. The presumption is that the people trust the legislature equally with the courts, and all the more so because the legislature is more directly amenable to the people. If, in the distribution of judicial jurisdiction, the legislature imposes unreasonable or unsatisfactory provisions, the people have it in their power at once to change such provisions by choosing legislators who will give them satisfactory laws. But an unwise use of power does not render the exercise of it, under an express grant, unconstitutional. The question before us is not one of the policy of the law, but of its constitutionality. It is not a violent presumption that the people meant to give the legislature full power to apportion the jurisdiction of the courts, when in the same article they gave the legislature full power over the

personnel of the court by authorizing them to declare their seats vacant at any annual election.

In *Littlefield* v. *Peckham*, 1 R. I. 500 (1851), where the question was whether a law requiring payment of costs of conviction, on appeal from a justice of the peace, was unconstitutional, as in derogation of the right of trial by a jury, Judge Brayton said : "Must we not say that there is vested in the legislature a reasonable discretion in the matter—that they are not to be tied down in the exercise of an undoubted power to regulate appeals in all cases and prescribe the terms and conditions? They must be left to make such provisions as they, in good faith, shall from time to time consider the reasonable demands of the public require for the advancement of public justice. Should they, at any time, disregarding the right of trial by jury, make provisions so unreasonable, prescribe conditions so oppressive, as to evince a design not to regulate, but to deny the right altogether, the time will have arrived when this court will feel it their duty to declare such provision void, as against the constitutional right of the citizens. Is it clear that the provisions now objected to evince any such design ? May we not fairly consider them as a subject for their consideration—to determine whether the advancement of public justice necessarily requires them."

The fallacy in the defendant's argument is in his assumption that all appellate jurisdiction necessarily goes to the Supreme Court, which, as we have seen, is not so ; and, secondly, in his failure to distinguish between the exercise of jurisdiction and the distribution of jurisdiction.

Under the constitution the General Assembly can exercise no judicial jurisdiction, but it can regulate and distribute it. This was settled in *Taylor* v. *Place*, 4 R. I. 324 (1856), on which the defendant specially relies, and in considering it we will take up the defendant's next proposition, because the few illustrations which we will cite in this State will thus serve the double purpose of showing that the power of the legislature to distribute appellate jurisdiction has been conceded since the adoption of the constitution, and that no per-

manent special jurisdiction, other than chancery and constitutional construction, has been regarded as fixed in the Supreme Court beyond the power of change. The defendant argues that a fixed and special jurisdiction is given to the Supreme Court by article XIV, section 3, "Of the adoption of the constitution," which is : "The supreme court, established by this constitution, shall have the same jurisdiction as the supreme judicial court at present established, and shall have jurisdiction of all causes which may be appealed to, or pending in the same ; and shall be held at the same times and places, and in each county, as the present supreme judicial court, until otherwise prescribed by the general assembly."

This he claims gives to the Supreme Court, permanently, "the same jurisdiction as the supreme judicial court" had before the adoption of the constitution.

We have no hesitation in saying that this cannot be so, either by the terms of the constitution or by the practice under it.

The defendant fails to recognize the qualifying clause, "until otherwise prescribed by the general assembly." He argues as though these words were not there, or as if they relate only to the times and places of holding the court. The words evidently qualify the whole section. It is a provision for carrying on the existing jurisdiction "until otherwise prescribed." The constitution was to go into operation on the first Tuesday in May, 1843, and the General Assembly was to meet on the same day. New laws for the courts might not be passed at once, and hence the provision for continuing the existing condition until the legislature should act. If the jurisdiction was to be permanent, the natural place for it would have been in article X, "Of the judicial power," in the grant of power.

The section is all one sentence, for it has but one subject.

It is obviously a temporary provision ; but its effect is to continue the old jurisdiction until it is changed. So far as it has not been changed it is still operative, according to its terms ; but to say that it confers a jurisdiction which cannot be changed is to contradict both its purpose and its terms.

It would make article X and article XIV inconsistent; for by the former the jurisdiction is expressly left to legislation, and, by the claim here made, the latter would give a jurisdiction outside of legislation.

The defendant relies on *Taylor* v. *Place*, as holding that the jurisdiction of the Supreme Judicial Court was permanently vested in the Supreme Court. Some of the language of that opinion may give that impression, but a careful study of the case and of subsequent action by the writer of the opinion show that such a scope was not intended. In that case the General Assembly had passed an act granting a new trial in a case decided by the court. The court decided that the Assembly had no jurisdiction to do that, because it was a judicial act, and the entire judicial power was vested in the judiciary.

To use the words of Judge Ames: "After the adoption of this constitution, judicial power, in the constitutional sense, shall be exercised in this State, not by the General Assembly, but only by the *courts* of this State." What was before Judge Ames for consideration was the *exercise* of judicial jurisdiction by the legislature, not the *distribution* of jurisdiction among the courts under the constitution.

He said the former was wholly given to the courts, and that it could not be taken away or diminished so as to leave any such jurisdiction in the General Assembly. In further emphasis of this point he referred to article XIV, to show that it was not left to the legislature even for temporary exercise, but was conferred at once upon the Supreme Court, the only court in existence, until the Assembly should establish others. The evident purport of the opinion is that the legislature could not exercise any judicial jurisdiction, but that under article X, which he also quotes, it could regulate it.

It is to be noted that when the act in *Taylor* v. *Place* was passed, the statutes of the State gave to the Court of Common Pleas power to grant new trials in appeals for accident and mistake, the ground on which the act was based, and such power in that court existed continuously to 1893, when the court was abolished. In cases brought in the Court of

Common Pleas, appeal could be taken to the Supreme Court, so that the whole ground was already covered by legislation. This fact also shows that the power to grant new trials has not been regarded as necessarily and exclusively in the Supreme Court, which is one of the defendant's basal assumptions.

How has it been in practice ? Has the jurisdiction of the Supreme Judicial Court been kept intact in the Supreme Court, under a supposed grant in the constitution ? By no means. The instances of change, unquestioned by court or bar, have been numerous and important. A few will suffice to show that such jurisdiction has not been regarded as a constitutional determination. Prior to the constitution, the Supreme Judicial Court had original jurisdiction of all criminal cases, and jurisdiction on appeal from the Courts of Common Pleas in all cases originally commenced therein. The digest of 1857, Judge Ames being the chairman of the committee of revision, cap. 165, §§ 3, 9, gave the Court of Common Pleas original jurisdiction with the Supreme Court, *and without appeal*, of all crimes, except those punishable with imprisonment for life, thus taking away jurisdiction which had been exercised by the Supreme Judicial Court.

It is not to be supposed that Judge Ames had forgotten the doctrine of *Taylor* v. *Place* within a year, and, if it were what the defendant claims, he certainly would not have recommended anything contrary to it. Later he again spoke judicially on this subject. In *Matter of Nichols*, 8 R. I. 50 (1864), where the constitutionality of an act admitting a tort debtor to take the poor debtor's oath was in question, he said, quoting article X, section 2 : " We see no reason to doubt the legality of the special act in question, or that the justices were, on that ground, empowered, under the clause of the constitution just recited, to exercise the additional jurisdiction conferred by it."

In 1847 the jurisdiction of the Supreme Court was made concurrent with the Court of Common Pleas in civil suits in which the debt or damages amounted to one hundred dollars,

and in 1867 this amount was raised to three hundred dollars in the county of Providence.

Pub. Laws cap. 692 (1867), provided : " Cases in equity, and motions and other applications therein, whether interlocutory or final, shall, in the first instance, be heard and determined by one justice of the supreme court." An appeal was allowed to the full court. In 1871, Pub. Laws cap. 894, the right of appeal was abolished, and in lieu of it the single justice hearing the cause was given the right, if he thought it proper, to report the case to the full court for hearing.

This provision was not continued in the revision of 1872 ; but meanwhile it was acted upon by the court, without question of its constitutionality, although it involved the exercise of chancery powers by one judge specially reserved by the constitution to the Supreme Court.

In *Parker* v. *Barstow*, 5 R. I. 232 (1858), an action was brought in the Supreme Court by the general treasurer of the State to recover a penalty of $500. The defendant pleaded to the jurisdiction of the court, relying on Rev. Stat. cap. 225, § 4, which provided that penalties upwards of twenty dollars should be prosecuted in the Court of Common Pleas. The attorney-general argued that, as the Supreme Court had, by statute, jurisdiction concurrent with the Court of Common Pleas of all cases where the debt or damages amounted to $100, said section was not intended to limit the jurisdiction of this court in this class of cases.

Ames, C. J., said that the section " vests exclusive jurisdiction, in proceedings for this purpose, in justices of the peace or in the court of common pleas, according to the amount or value of the fine, penalty or forfeiture sought to be recovered ; and with this construction in relation to this class of criminal, or *quasi* criminal cases, may well stand with chapter 164, section 20 of the Revised Statutes, which defines the civil jurisdiction of this court." The plea to the jurisdiction of the Supreme Court was sustained, and the suit dismissed.

*State* v. *Slocum*, 9 R. I. 373 (1869), was an indictment found in the Court of Common Pleas for the erection of a building

in the city of Providence contrary to an act passed in 1848, which provided that the indictment should be found in the Supreme Court. The defendant pleaded to the jurisdiction of the Court of Common Pleas. Brayton, C. J., said: "By chapter 659 of the Public Acts, section 5, passed March 7, 1867, it was enacted that 'all indictments for crimes in the county of Providence shall be found in the court of common pleas for said county, and the said court shall have the exclusive power to try all such indictments, except for crimes punishable by imprisonment for life.'

"The act purports to take from this court jurisdiction over any and every indictment for any offence then within its cognizance, except crimes punishable by imprisonment for life; and it also purports to vest in the court of common pleas jurisdiction to try and determine every indictment for any of those offences. If this act can have the effect which upon the face of it appears to have been intended, then the jurisdiction over the indictment for this offence is taken from this court and transferred to the court in which this indictment was found." The court sustained the latter act, and held the plea of want of jurisdiction in the Court of Common Pleas to be insufficient.

From the time of the adoption of the constitution to the present time, hardly a session of the General Assembly can be found where some change has not been made in laws affecting the jurisdiction of the courts. It is needless to multiply instances, for those already cited are sufficient to establish two propositions: First, that the regulation of jurisdiction in all the courts is in the General Assembly ; and, second, that a fixed jurisdiction was conferred upon the Supreme Court by article XIV of the constitution only "until otherwise prescribed by the general assembly."

If this be so, the next question is whether the division of jurisdiction made in the judiciary act of 1893 violates the constitution. Upon this question the defendant's proposition is that whatever the jurisdiction of the court may be, it must be exercised by the whole court, or at least by a majority of the court.

Here again his argument rests upon assumptions, and not upon any express provisions of the constitution.

Article X prescribes neither the number of the judges to constitute the court, nor the number necessary for a quorum. In this respect it is in significant contrast with the article relating to the legislative power, in which, article IV, section 6, it is required that a majority of the members of each house shall constitute a quorum.

We may well ask, if less than a majority constitute a court, what provision of the constitution is violated ? The defendant points out none, but says that there must be a majority as a rule of law.

Evidently it was not so understood in this State at the time the constitution was adopted, for in the " act in relation to the supreme court," June, 1843, within a month after the constitution went into effect, the number of judges was four, " any two of whom shall be a court."

From that time down to 1893, when the number of judges had increased to six, the quorum of the court remained at two, and, so far as appears, without question. In 1893 it was raised to three. Neither number was the whole court nor a majority.

In June, 1852, one judge was made a quorum for all purposes, except naturalization, insolvency, divorce, new trials, equity, demurrers, arrest of judgment, and indictments punishable by imprisonment for life or for seven years. In the following October the criminal jurisdiction was confined to cases involving imprisonment for life, and the act was declared not to preclude the holding of the Supreme Court by a single justice in two places in the same county, "nor the holding of said court in two or more counties and there exercising all the powers conferred on said court when holden by a single justice."

The same provisions were embodied in the revision of 1857, with an addition, Rev. Stat. cap. 164, § 30, that " the empowering of a single justice to hold the said court for certain purposes shall not be construed to preclude the other justices

of said court, or any or either of them, from sitting and act-
ing with a single justice.

The defendant argues that the present arrangement of the
courts is unconstitutional for want of such a provision, upon
the ground that a judge cannot be deprived of the jurisdic-
tion of his office.

Without doubt this is true to the extent of a vested consti-
tutional power ; but the question still remains, what is the
vested constitutional power when its distribution is expressly
left with the legislature by the constitution ?   If any jurisdic-
tion can be delegated to one or more of the judges, it must
be, that an exclusive right can be delegated ; or else the power
would be dependent for its exercise upon the will of the other
judges, and not upon the constitution or a legislative act.    In
such case the judges would make the distribution themselves,
instead of the legislature, to which the constitution expressly
confides it.    If the legislature can give the jurisdiction at all,
it can do so without asking consent of the judges.

The right to give full jurisdiction to a minority has been
the rule from the adoption of the constitution until now, and
it was so even before the constitution.

November 1, 1834, an act empowered any one justice of
the Supreme Judicial Court, in case a majority were pre-
vented from attending, to hold the court with the full power
and authority that a majority would have.

The assignment of a judge to the Court of Common Pleas
has been continuous from the adoption of the constitution,
and one engaged in that duty has been, *ipso facto*, excluded
for the time from the Supreme Court, since he could not sit
in two places or hold two courts at the same time.    If when
one or two judges are exercising jurisdiction, as '' prescribed
by law,'' can others come in, by virtue of their office, and
nullify or reverse rulings, action, or decision ?   It has never
been so understood.    We cannot think that the section was
based upon this principle.    It would be impracticable to do
the business of the court under such a rule.    If every suitor
could demand a full court, there could be, in practice, only
one department.    The consensus of three-quarters of a cent-

ury in this State negatives this, and establishes the right to give full jurisdiction to a minority of the court. *Stuart* v. *Laird*, 1 Cranch. 299. Why, then, was section 30 put into the revision of 1857 ? We think the reason is not far to find. It often happens that cases before a single judge involve such important points that he desires the aid of other judges. This section made it plain that he could have such aid, for its express purpose was to avoid an implication of preclusion, rather than to assert the rights of other judges.

We next come to the question whether the long continued rule of this State is contrary to recognized rules of law in regard to a minority acting for the court.

Cases on this subject are not numerous, because most constitutions prescribe the quorum of the court; but there are decisions quite in line with the practice in this State. For example, Marshall, C. J., in *Pollard* v. *Dwight*, 4 Cranch. 421 (1808), said : "As little foundation is there for the exception taken to the manner in which the circuit court was constituted. That court consists of two judges, any one of whom is capable of performing judicial duties. So this court consists of seven judges, any four of whom may act. It has never been supposed that the death of three of the judges would disqualify the remaining four discharging their official duties until the vacant seats of their departed brethren should be filled. There is nothing in the peculiar phraseology of that part of the act which establishes the circuit courts that requires a different construction of the words authorizing a single judge to hold those courts from what is usually given, in other cases, to clauses authorizing a specified number of justices to constitute a court."

In *Wood* v. *Fithian*, 4 Zab. (24 N. J. L.) 838 (1855), an act had given jurisdiction to the justices of the Supreme Court to designate one or more of their number to sit apart for hearing such matters as the court denominate "common business ; " the constitutionality of this act was raised on *certiorari*. The constitutional provision was the same as ours.

The court expressed the opinion that the act was constitutional. "It was not two Supreme Courts which the act con-

templated, but one court, dispatching different classes of judicial business, by its different members at the same time." See also *Gray* v. *Bastedo*, 46 N. J. L. 453.

In *Mussen* v. *Ausable*, 70 N. Y. Sup. Ct. 367 (1892), an act gave exclusive jurisdiction of all actions against the city of New York to a single district of the Supreme Court. The act was held to be unconstitutional, but the grounds for so holding are pertinent and instructive in this case. The constitution, article VI, section 6, provided : " There shall be the existing supreme court with general jurisdiction in law and equity." The constitution of 1846 was : " There shall be a supreme court," etc.

The court held that it was a provision as to the court as a whole, but that for convenience in transacting business the court could be divided into districts, each with the full power of the court and the Supreme Court of the State, not the Supreme Court of a district. The vice pointed out in the act was that as a suitor had the right to go into the Supreme Court anywhere, he could not be limited to a particular district.

In *Oakley* v. *Aspinwall*, 3 Comst. (N. Y) 547 (1850), the court said : " It may be said that this court consists of eight judges ; that a less number cannot constitute it, and therefore from necessity its members must sit in all cases." But, under the power given to the legislature to provide for the organization of the court : " The authority to organize implied a right to ordain whatever was necessary or fit in order to form the court and give it efficient action, without going counter to the constitution, which is silent on the subject of a quorum." Hence a law fixing a quorum of less than eight was adjudged to be constitutional.

In *State* v. *Lane*, 4 Ired. 434 (1844), Ruffin, C. J., said: " It is said that all the judges are required to compose a court, by force of the term ' court.' " It was held that this was not so, for the reason : " If all the judges be necessary to constitute ' the court,' then all must also be necessary to give the judgment of the ' court ' as far as the import of that term, in itself, goes."

See also *Opinion by Baltzell, C. J.* 8 Fla. 478 (1859), following *State* v. *Lane.*

Other cases might be cited to the same effect, but we think it is apparent that neither all the judges nor a majority are required to constitute a quorum, when the constitution does not require a specified number and the legislature has power to prescribe the jurisdiction of the courts by law.

In the House of Lords, the Supreme Court of the realm of England, a small minority sits in deciding appeals. While there is no written constitution governing that body, so also there is no written provision governing the quorum of our court. As courts, the same rule would be applicable to each. We see no distinction between the words "quorum" and "court." Each term implies a body capable of exercising the function of the whole body, not otherwise reserved.

It is said that the existing arrangement makes two or more Supreme Courts. This is no more so than it has been continuously since the organization of this court, when, under Chief Justices Greene, Staples, Ames, Bradley, Brayton, and Durfee, separate branches of the court have been held at the same time.

The fact is that the judiciary act introduced no new feature into our judicial system. It simply changed the name of the court. Before it, the judges held both the Supreme Court and Court of Common Pleas. The time had arrived when the Supreme Court could no longer transact its original and appellate business.

Some change was required. All jury trials could not be put into the Court of Common Pleas, because that court could not try cases which involved equitable pleas because the constitution confined all equity jurisdiction to the Supreme Court. Accordingly the Court of Common Pleas was abolished, and original jurisdiction in civil and criminal cases was given to a division of the Supreme Court to be called the Common Pleas Division, and appellate and general equity jurisdiction to the Appellate Division, while constitutional questions are reserved to the full court.

The purpose of the judiciary act which made these changes

was well put in its title : "An act to simplify the duties, equalize the burdens, and increase the efficiency of the judiciary of the State." The act was fully made known to bench, and bar, and people before it was reported by the commissioners, and by general consent it was regarded as constitutional. It has been tried for nearly ten years, and it has worked exactly as a system of inferior and appellate courts would have worked. It may not be an ideal system, but it seemed to be the only one that could afford immediate relief without an amendment to the constitution.

By it, instead of jurisdiction being taken away from the Supreme Court, all jurisdiction above the District Courts was committed to it. Admitting, therefore, the defendant's proposition that no jurisdiction can be taken from the Supreme Court, it appears that it has not been done. The only real question is, can it be committed to divisions ?

The logical result of the defendant's argument, that the court is indivisible, is that it must sit as a whole in all cases. If so, it cannot be divided for jury cases, and hence a new trial should be granted in this case because the trial was *coram non judice*. The defendant does not go to this extent. He concedes that the court is divisible for the purposes of his verdict, but indivisible for the purpose of reviewing it. We find no warrant for such a distinction in the constitution.

It is said that if the Appellate Division can sit in review of cases tried in the Common Pleas Division, the latter is thereby made an inferior court, and hence it is not a part of the Supreme Court. To that the reply is that it is no more so than when judges, all along, have held jury trials in the Supreme Court, with the same power of review by a quorum of the court for that purpose ; and this power has been too long recognized and established to be open to question.

Another objection made to the act is that it gives the chief justice the power to designate the justices in the Division. It is urged that this should be done by the court. Doubtless that would be better, for the judgment of several is likely to be better than that of one ; but this is a question of policy, not of constitutional power. The constitution no more gives

such power to assign to the judges than it does to the chief justice. If the legislature can confer it upon either, it can confer it upon the other. Still, by almost universal practice, where separate duties of a court are to be performed they are assigned by the chief justice, as the more convenient way, since the assignment of such duties must be made by some one.

Some calculations in permutations and combinations have been made, to show of how many constituent elements the court may be composed under the present system. They are quite correct, and a like result can be shown as to the Supreme Court of the United States, or any other court whose quorum is less than their whole number. This, however, is a constitutional question, and such problems are not solvable by mathematics.

The defendant admits the power of the legislature to fix a quorum, upon the ground that it simply gives a number competent to transact business, not excluding others but leaving them free to take part in the proceedings. If the power delegated to the legislature was simply that of fixing a quorum, his position would be unanswerable. But when the power is general as to jurisdiction, if it can be given to a part at all it can be given exclusively to such part. We need not here attempt to define its limits. It is enough for this case that the right to grant new trials has never been wholly vested in the Supreme Court and has never been required to be exercised by a full court.

We have one Supreme Court with full jurisdiction upon the highest matters, and divisions for subordinate matters.

Our conclusion is that jurisdiction in all appellate cases is not necessarily vested in the Supreme Court as one body; that the court does not necessarily sit as a whole in all cases, but its jurisdiction may be separated into parts; that such parts may be entrusted to less than the whole, or a majority, of the body; that the distribution thereof is within the power vested in the legislature by the constitution, and, consequently, that the act giving to the court jurisdiction in divisions is not unconstitutional.

The motion to dismiss the petition for a new trial upon the grounds alleged is therefore denied.

*Franklin P. Owen*, for plaintiff.
*Gorman & Egan*, for defendant.

