DECISION
Consolidated before this Court are a petition for declaratory and injunctive relief and an administrative appeal challenging a Department of Business Regulation ("Department") decision. Arthur Brown and Beverly Brown d/b/a Parkside Terrace Mobile Home Park ("Appellant") appeal a Department decision finding Appellant's mobile home park regulations not in compliance with R.I. Gen. Laws §§ 31-44-3 (11)(ii) and31-44-7(1)(vii) ("the Provisions"). The Appellant also requests this Court to declare the Provisions unconstitutional and accordingly enjoin the Department's enforcement of them. Jurisdiction is pursuant to G.L. 1956 § 42-35-15 (Administrative Procedures Act) and § 9-30-1 et.seq. (Uniform Declaratory Judgment Act).
 FACTS AND TRAVEL Denial of Mobile Home Park License Renewal
The Appellant owns and operates Parkside Terrace Mobile Home Park ("Park") in Pawtucket, Rhode Island. Pursuant to R.I. Gen. Laws §31-44-1.7, Appellant must file with the Department all applicable Park leases and regulations when it seeks to renew its annual license. In response to Appellant's renewal application for its year 2000 license, the Department issued notice to Appellant of its intent to deny the renewal. For Appellant's renewal application for its year 2001 license, the Department again issued notice to Appellant of its intent to deny the renewal. The Department issued the notices on the basis that Appellant's Park regulations were not in compliance with the Provisions.
The two subject sections of the Mobile and Manufactured Homes Act provide in relevant part:
 "All terms and conditions of occupancy must be fully disclosed by the mobile and manufactured home park owner to any prospective resident in a written lease and at a reasonable time prior to the rental or occupancy of a space or lot. The disclosures shall include, but shall not be limited to, the following:
 (1) The licensee shall agree at all times during the tenancy to:
 (vii) Maintain all utilities provided to mobile and manufactured homes within the park up to and including the connection to the individual mobile/manufactured home, and all water and sewage lines and connections in good working order, and in the event of any emergency, make necessary arrangements possible for the provision of service on a temporary basis. There shall be no additional charge for the use of water because a resident has children;" R.I. Gen. Laws § 31-44-7(1)(vii).
 "If the park owner or management implements a rule or regulation prohibiting pets, the new rule or regulation does not prevent residents from keeping the pets they had prior to the new rule or regulation, as long as those pets conform with previous park rules or regulations. If the pet dies, the resident has the right to replace it, notwithstanding the new rule or regulation." R.I. Gen. Laws § 31-44-3 (11) (2000 reenactment).[1]
Appellant's Park regulations at issue state:
 "SEWAGE AND PLUMBING
 1. . . .
 2. The Lessee/resident shall be responsible for the cost of pumping or maintaining Lessee/resident's septic system if the Lessee/resident has a washing machine, dishwasher or garbage disposal unit in lessee's mobile home, pre-existing the date of these Rules and Regulations and lease. Lessor shall be responsible for the cost of routine pumping and acid treatment for the septic systems in this mobile home park on a routine treatment basis, except for those costs incurred by Lessee/residents having a pre-existing washing machine, dishwasher, or garbage disposal unit in Lessee's mobile home. Any septic system for a mobile home having a washing machine, dishwasher or garbage disposal unit which needs pumping shall be immediately pumped and acid treated within twenty-four (24) hours of notice that the same needs to be done. The cost of said pumping and acid treatment shall be at the sole cost and expense of the Lessee/resident. The septic system for any mobile home which is being sold or removed from the park shall be pumped and treated with acid within one (1) week of said sale or removal. The cost of said pumping and acid treatment shall be at the sole cost and expense of the Lessee/resident. The septic system for the premises are not approved for the use of washing machines, dishwasher or garbage disposal units. No Lessee/resident shall install any new washing machine, dishwasher, or garbage disposal unit in Lessee's mobile home or on Lessee's premises.
 3. In no case shall any sinks, tubs, or other plumbing equipment drain directly onto the ground. All plumbing discharges shall go into the septic system only. Sewer and water pipes located above the ground are the personal property of the Lessee/resident and are the Lessee/resident's responsibility."
 "ANIMALS: One neutered, I.D. tagged, collared cat, and also one parakeet or parrot, is allowed per family. No dogs are allowed after December 1989. Anyone keeping a dog in the park, whether they own the dog or not, will be evicted. Anyone owning a dog previous to December 1989, shall be allowed to keep the dog as allowed by law, provided it does not disturb the neighbors and is kept on a leash when in the park. All pets must be registered with the manager. Please take your cats when you move out. Cats starve when abandoned."
With respect to said notices of denial of license renewal, Appellant sought an administrative hearing. Additionally, on November 18, 1999, Appellant filed a Complaint for Declaratory and Injunctive Relief with this Court, challenging the Provisions' constitutionality.
A Department of Business Regulation hearing officer heard Appellant's cases on February 15, 2000 and May 1, 2001. Appellant argued that tenants with washing machines, dishwasher, or garbage disposal units overuse the septic system and must therefore pay for the additional septic pumping. Appellant reasoned that such payment is fair, and tenants appear satisfied with these requirements. Appellant also argued that charging costs related to pumping the system are not akin to requiring tenants to "maintain" the system as the law provides. Regarding the sewer and water pipes, Appellant argued that aboveground pipes are often under the mobile home and difficult to access due to skirting and cinderblocks. Therefore, Appellant reasoned that the Agency's requiring it to maintain such pipes — or an interpretation of the statute to require such — is unreasonable, arbitrary, and exceeds the state's police power.
With regard to pets, Appellant argued that dogs are a nuisance in a mobile home park and that allowing previous dog owners to replace their deceased dog is unfair because new tenants and those who did not previously own a dog are not allowed to own dogs. Appellant finally submitted constitutional arguments, contending that the statutory provisions exceed state authority, deny equal protection and due process, and are arbitrary, absurd, and vague.
The Department's position was that Appellant's regulations violate R.I. Gen. Laws § 31-44-7(1)(vii) because Appellant passes on the cost of maintaining the septic system and/or cesspool to the tenant and makes the tenant responsible for aboveground water and sewer pipes. The Department also maintained that Appellant's regulations violate R.I. Gen. Laws § 31-44-3(11)(ii) by not providing tenants with grandfathered pets the right to replace a deceased pet with a similar pet.
The hearing officer issued a Decision in favor of the Department on April 24, 2002. The Decision ordered Appellant to cease violating the statutes, amend its regulations to conform to the Provisions, inform tenants of the change in regulations, submit its amended regulations to the Department for approval, and pay a $2000 administrative penalty. The instant appeal of that decision is now before this Court, along with Appellant's November 18, 1999 petition for declaratory and injunctive relief. The Department submits a memorandum of law in support of the agency's Decision, while the Attorney General's office of Rhode Island submits a brief in support of the constitutionality of R.I. Gen. Laws §§ 31-44-3(11)(ii) and 31-44-7(1)(vii).
 STANDARD OF REVIEW
Regarding Appellant's claim of error in the Department's Decision, R.I. Gen. Laws § 42-35-15 et seq. governs this Court's review of the matter. The statutory standard of review is that:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions; (2) In excess of the statutory authority of the agency; (3) Made upon unlawful procedure; (4) Affected by other error or law; (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing determinations of an administrative agency, this Court sits as an appellate court with a limited scope of review. Therefore, the Superior Court justice does not weigh evidence and the credibility of witnesses as to questions of fact. Center for Behavioral Health v.Barros, 710 A.2d 680, 684 (R.I. 1998); Mine Safety Appliances Co. v.Berry, 620 A.2d 1255, 1259 (R.I. 1993). The Court merely reviews the record in order to determine whether there is legally competent evidence to support the agency decision. Turner v. Department of EmploymentSecurity, Board of Review, 479 A.2d 740, 742 (R.I. 1984). The requisite level of evidence is "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion . . . [which is] an amount more than a scintilla but less than a preponderance." Caswell v. GeorgeSherman Sand Gravel Co., R.I., 424 A.2d 646, 647 (1981). Moreover, the Court may not substitute its judgment for that of the agency. Bunchv. Board of Review, R.I. Dept. of Employment and Training, 690 A.2d 335, 337 (R.I. 1997). This principle holds true even where the court "might be inclined to view the evidence differently and draw inferences different from those of the agency." Rhode Island Public TelecommunicationsAuthority v. Rhode Island State Labor Relations Board, 650 A.2d 479, 485 (R.I.1994).
When the decision of an agency is based upon a question of law, however, the Court reviews those findings de novo. Johnston AmbulatorySurgical Associates, Ltd. v. Nolan, 755 A.2d 799, 805 (R.I.2000). That is, questions of law are not binding and may be reviewed to determine what the law is and its applicability to the facts. Narragansett WireCo. v. Norberg, 376 A.2d 1, 6 (R.I. 1977). The Rhode Island Supreme Court, however, voices one caveat to this general rule: a court should give deference to an agency's interpretation of a statute "that it has been charged with administering and enforcing, provided that the agency's construction is neither clearly erroneous nor unauthorized." Arnold v.R.I. Dept. of Labor and Training Bd. of Review, 822 A.2d 164, 169 (R.I. 2003); see also Lyman v. Employees' Retirement System of the State ofR.I., 693 A.2d 1030, 1031 (R.I. 1997) (finding Superior Court erred in failing to give administrative interpretation its proper deference);Pawtucket Power Associates Limited Partnership v. City of Pawtucket,622 A.2d 452, 456-57 (R.I. 1993) (giving deference to an agency's interpretation of a statute it administers "even when the agency's interpretation is not the only permissible interpretation that could be applied").
 AGENCY DECISION RE §§ 31-44-7(1)(vii) AND §§ 31-44-3(11)(ii)
A threshold issue before this Court is whether Appellant's Park regulations violate R.I. Gen. Laws §§ 31-44-7(1)(vii) and31-44-3(11)(ii). Hence, this Court must determine whether the Department correctly interpreted the Provisions or erred in finding that the Park regulations breached those Provisions.
In reviewing the Department's Decision, this Court considers a number of legislative interpretation principles. For example, the Court must effectuate the Legislature's intent by examining the Provisions in their entirety and give the words their plain and ordinary meaning. Town ofEast Greenwich v. O'Neil, 617 A.2d 104, 108 (R.I. 1992). This process includes an "attempt to ascertain the intent [of the Legislature] by considering the enactment in its entirety and by viewing it in light of the circumstances and purposes that motivated [the Provisions'] passage."Brennan v. Kirby, 529 A.2d 633, 637 (R.I. 1987). In other words, the Provisions at issue cannot be "construed in a way that would attribute to the Legislature an intent that would result in absurdities or would defeat the underlying purpose of the enactment. . . ." Id. (citing Cityof Warwick v. Aptt, 497 A.2d 721, 724 (R.I. 1985).
With respect to legislative intent, the Department found that:
 "[I]t is clear that the legislature intended to afford mobile home owners significant statutory protection with respect to their relationship with mobile home park owners. . . . Among the statutory protections in the Act are: (i) specific requirements for Rules and Regulations; (ii) specific conditions on the sale of mobile and manufactured homes; (iii) protection to mobile home residents from reprisals from park owners; (iv) detailed and specific terms required in leases; and (v) the right of mobile home owners to peaceably assemble — right to communicate. These very specific statutory protections were apparently deemed necessary by the legislature because of the inherent unequal relationship which exists between the mobile home park owner and the mobile home owner. That is, the mobile home tenant (often an individual with low to moderate income or on a fixed income) . . . would be at the mercy of the mobile home park owner. . . . Thus it is clear from the statutory scheme in the Act that the legislature has determined that the mobile and manufactured housing residents should be afforded certain legal rights and protections." Department Decision at 8-9.
The Rhode Island Supreme Court has noted that with mobile home parks, "special circumstances" exist and unequal bargaining power may lead to abuses by the park owner. Kingston Mobile Home Park v. Strashnick,774 A.2d 847, 853 (R.I. 2001). In a declaration of policy regarding rent increase regulations, the Legislature has declared that mobile homes are an important source of affordable housing, vital to the citizens of Rhode Island. Id. at 855-56 (citing R.I. Gen. Laws § 31-44.1-1). Thus, this Court finds, as more fully discussed below, the Department's interpretation and analysis of the Mobile and Manufactured Home Act is not clearly erroneous or affected by error of law.
 Section 31-44-7(1)(vii) — Sewage and Plumbing Express Statutory Violations
Appellant contends that because some residents place an added burden on the septic system, it is fair and reasonable to require these tenants to maintain the system. For instance, Appellant argues and presents evidence that washing machines, dishwashers, and garbage disposal units overuse and have an adverse impact on the septic system, thereby requiring more pumping and maintenance. The Legislature, however, clearly places the burden of maintaining the mobile home park septic system — including the pipes and pumping — on the park owner. See
R.I. Gen. Laws § 31-44-7(1)(vii). Fundamental tenets of our governmental system prevent this Court from contravening the intent and express will of a valid legislative Act.[2] The statutory provisions expressly and unambiguously require the owner to "maintain all utilities . . . up to and including the connection to the [mobile home], and all water and sewage lines and connections in good working order. . . ." The Department found that Appellant violated said Provisions by (1) requiring tenants with washing machines, dishwasher or garbage disposal units to be "responsible for the cost of pumping and maintaining" the septic system, and (2) requiring tenants to maintain aboveground water and sewer pipes. As discussed above, the legislature sought to protect tenants by placing obligations such as these on the park owner. No exception is made regarding the Appellant's position. See R.I. Gen. Laws § 31-44-7(1)(vii). Thus, this Court finds that the Department's interpreting the sewage and plumbing related Provisions and finding Appellant in violation of those Provisions is supported by the reliable, probative, and substantial evidence of record and is not affected by error of law.
 No Underneath-Mobile-Home Exception
Appellant further disputes having to maintain aboveground, outdoor pipes located underneath mobile homes. The Department found Appellant only in violation as to aboveground, outdoor pipes; aboveground, indoor pipes were not a basis of the violation. Decision at 12-13.[3] Apparently, the Department interpreted the statute as not requiring park owners to maintain pipes and connections that are indoors, as they are not part of the Park's infrastructure. See id. The Department did not find an exception for pipes and connections located underneath mobile homes, and this Court will neither read such an exception into the statute, despite Appellant's argument that it is difficult to access these pipes. SeeSimeone v. Charron, 762 A.2d 442, 448-49 (R.I. 2000) (refusing to broaden statutory provisions by judicial interpretation "unless such interpretation is necessary and appropriate in carrying out the clear intent or defining the terms of the statute").
With respect to pipes underneath mobile homes enclosed by skirting and cinderblocks, it is within the Department's discretion to determine whether such pipes are "indoors" and therefore not to be maintained by the park owner under § 31-44-7(1)(vii). See Arnold, 822 A.2d at 169;Lyman, 693 A.2d at 1031; Pawtucket Power Associates Limited Partnership, 622 A.2d at 456-57 (giving deference to an agency's interpretation of a statute it administers). This interpretation is necessary, appropriate, and consistent with the legislative intent. See Simeone, 762 A.2d at 448-49; Brennan, 529 A.2d at 637.
Therefore, per the statute and the Department Decision, Appellant must maintain all pipes and connections unless they are considered "indoors" by the Department, despite being aboveground or underneath a mobile home. The Department's interpretation of § 31-44-7(1)(vii) and its finding Appellant in violation to the extent it required residents to maintain aboveground, outdoor pipes/plumbing was not clearly erroneous or affected by error of law. Department Decision at 12-13.
 Section 31-44-3(11)(ii) — Pets
Regarding Appellant's violation of the pet provision, §31-44-3(11)(ii), Appellant does not argue that the Department erred in interpreting the section or in finding that Appellant's regulations violate the section. Rather, Appellant's argument focuses on the constitutionality of this Provision, which this Court will addressinfra. Nonetheless, the Court holds that the Department's finding that Appellant violated said section is supported by the reliable, probative, and substantial evidence of record. While the statute grants Park residents the right to replace a deceased pet with a similar pet, the record reflects that Park regulations do not provide residents with such a right. Compare R.I. Gen. Laws § 31-44-3(11)(ii) with Decision at 3 n. 3 (quoting Appellant's animal regulation). Appellant's notation of its updated regulation and alleged fact that no tenant has a grandfathered dog is irrelevant as to whether the Department properly found Appellant as then violating the statute.[4]
 CONSTITUTIONALITY OF §§ 31-44-7(1)(vii) AND §§ 31-44-3(11)(ii)
As to Appellant's constitutional challenge of R.I. Gen. Laws §§31-44-3(11)(ii) and 31-44-7(1)(vii), additional standards govern this Court's deliberation. See Gorham v. Robinson, 186 A. 832, 837 (R.I. 1936) (discussing the "greatest possible caution and even reluctance" a court must exercise in "so solemn a duty" as declaring a statute void). Legislative enactments are presumed valid and constitutional, RhodeIsland Depositors Economic Protection Corp. v. Brown 659 A.2d 95, 100 (R.I. 1995), and courts should be "extremely deferential" in reviewing legislative enactments because of the General Assembly's "broad plenary power." In re Christopher S., 776 A.2d 1054, 1057 (R.I. 2001) (citing Cityof Pawtucket v. Sundlun, 662 A.2d 40, 44-45 (R.I. 1995)).
In the instant case, Appellant contends that the Rhode Island General Assembly lacks the authority to require mobile home park owners to (1) maintain all sewage utilities despite some tenants' alleged additional use, (2) maintain all sewer and water pipes not within the mobile home, and (3) provide residents with grandfathered pets the right to replace those with similar pets when they die. Appellant lists an assortment of reasons why the Provisions are "unconstitutional"; however, Appellant is in fact arguing why the Provisions are harsh, burdensome, or unwise from its perspective. See Morrison 65 A.2d at 222 (no legislative act may be set aside on grounds that its policy may be harsh or unwise). For example, Appellant argues that dogs are a nuisance in a mobile home park; tenants with certain appliances overuse the septic system and should be required to pay for its maintenance; and it is more appropriate to make tenants responsible for aboveground, outdoor pipes and connections that are underneath the mobile home. However, if the legislature has the power to enact legislation, "the wisdom or prudence of it is beyond our province. If it is not wise or prudent, then the people and not this court, have the power to apply the necessary corrective." Morrison, 65 A.2d at 223 (quoting Floyd v. Quinn, 24 R.I. 147, 152 (1902)). Moreover, the Court interferes with enactments such as these only when the legislation palpably and unmistakably exceed legislative power. See In reChristopher S., 776 A.2d at 1057.
The Appellant claims that the Provisions are arbitrary, capricious, and unreasonable; bear no reasonable or substantial relation to any legitimate governmental interest; exceed the state's lawful authority; bear no rational relationship to public health, safety, or welfare; and infringe on the freedom to contract and pursue a lawful business objective. The Appellant, however, neglects to explain how the Provisions violate these principles. Other than citing cases for general constitutional principles, Appellant does not cite any authority in support of its position. Therefore, Appellant's argument fails. See RhodeIsland Depositors Economic Protection Corp. v. Brown, 659 A.2d 95, 100 (R.I. 1995) (party challenging the constitutionality of an act carries the burden of persuading the court that the act violates an identifiable aspect of the Rhode Island or United States Constitution). Appellant needed to show beyond a reasonable doubt that the Provisions are repugnant to an identifiable aspect of either the Rhode Island or United States Constitution. See Rhode Island Depositors Economic ProtectionCorp., 659 A.2d at 100 City of Pawtucket v. Sundlun, 662 A.2d 40, 45 (R.I. 1995). Appellant does not meet this burden. In fact, Appellant does not cite or identify any constitutional provision. Given the deference and presumptions favoring legislative enactments id.; Brennan, 529 A.2d at 639, Appellant's constitutional challenge of both 31-44-3 (11)(ii) (Pets) and 31-44-7(1)(vii) (Sewage) fails in its infancy. The Provisions themselves and the Department's decision do not violate constitutional provisions.
Regarding Appellant's substantive due process rights, the United States Supreme Court has not invalidated socioeconomic regulations of the type Appellant challenges since the 1937 judicial crisis. In re AdvisoryOpinion to the House of Representatives 519 A.2d 578, 581 (1987); seealso Planned Parenthood v. Casey, 505 U.S. 833, 861-62 (1992) (discussing Courtpacking crisis where the Supreme Court abandoned its "substantive limitations on legislation limiting economic autonomy"). The Court no longer weighs the wisdom of state social and economic legislation, but rather allows states broad latitude in legislating against what they perceive as harmful commercial affairs. Id.; see also Lochner v. NewYork, 198 U.S. 45, 75-75 (1905) (Holmes J. dissenting), (eschewing the idea that the Constitution embodies laissez fair economic theory). Legislation infringing upon explicit constitutional rights face strict judicial scrutiny, however. Advisory Opinion to the House ofRepresentatives, 519 A.2d at 581-82. Where no fundamental interest is infringed and where the state's aim is to promote the welfare of its citizens, the challenger of such a police power must demonstrate no rational connection between the regulation and its legislative aim. Id. at 582; Rhode Island Depositors Economic Protection Corp., 659 A.2d at 100 (purely economic legislation, not involving a suspect class or fundamental right, passes constitutional muster if a rational basis exists).
Here, the General Assembly sought to afford mobile park residents with certain legal protections due to unequal bargaining power and past abuses. See supra. Appellant has not shown the absence of a rational connection between these Provisions, requiring park owners to maintain sewage utilities and permit residents with grandfathered pets to replace those pets, and the Legislature's aim to protect the welfare of park residents. Conversely, a rational relationship especially exists in this case because the General Assembly considers mobile homes a vital source of affordable housing in need of special protection. See Kingston MobileHome Park, 774 A.2d at 853, 855-56 (finding that with mobile home parks, "special circumstances" exist and unequal bargaining power may lead to abuses by the park owners). Requiring park owners to maintain sewage utilities and permit residents with grandfathered pets to replace those pets is therefore rationally connected to the state's aim of protecting mobile home residents. Appellant's substantive due process rights are not violated simply because the Provisions burden the Appellant. See PFZProperties, Inc. v. Rodriguez, 928 F.2d 28, 31 (1st Cir. 1991) (individuals are not protected from all governmental actions that infringe liberty or property interests). Additionally, any equal protection or invalid exercise of police power claim by the Appellant also fails for these same reasons. See United States Time Corp. v. Ann Hope Factory Outlet, 205 A.2d 125, 130 (R.I. 1964) ("when a question arises as to whether the legislature has exceeded the [police power], the test is not whether the enactment was wise, fair or desirable, but whether it bears a legitimate or substantial relation to the public health, safety, morals or general welfare").[5] Accordingly, this Court finds that in enacting the sewage and pet regulations, the General Assembly has neither exceeded its authority under the Rhode Island or United States Constitution nor infringed upon the rights of mobile home park owners granted therein. The administrative findings regarding §§31-44-7(1)(vii) and 31-44-3(11)(ii) are not in violation of constitutional provisions.
 CONCLUSION
After review of the entire record, this Court finds the decision of the Department of Business Regulation regarding Appellant's violations of R.I. Gen. Laws §§ 31-44-7(1)(vii) and 31-44-3 (11)(ii) is not clearly erroneous, is not affected by error of law, and is not in violation of statutory or ordinance provisions. Substantial rights of the Appellant have not been prejudiced. Additionally, this Court further declares, pursuant to its authority under § 9-30-1 et seq., that neither §31-44-3(11)(ii) nor § 31-44-7(1)(vii) of the Rhode Island General Laws violates the Constitutions of the United States or of the State of Rhode Island.
Counsel shall submit the appropriate judgment for entry.
[1] The 1999 reenactment contained slightly different wording. This change is immaterial for the purposes of the instant case. The 1999 version was
 "[i]f the park owner or management of a mobile and manufactured home park implements a rule or regulation prohibiting residents from keeping pets in the park, the new rule or regulation shall not apply to prohibit the residents from continuing to keep the pets currently in the park if the pet otherwise conforms with the previous park rules or regulations relating to pets. However, if the pet dies, the resident shall have the right to replace the pet."
[2] The validity of the statutory provisions at issue is discussedinfra.
[3] The "aboveground," "outdoor," and "underneath" language warrants some clarification because Appellant subtly shifts its position or misses a qualification in the Department's ruling. Appellant initially required residents to maintain aboveground pipes/connections. Appellant defended this on grounds that some pipes were underneath the mobile home and hard to access. The Department found that aboveground, outdoor pipes must be maintained by Appellant. Appellant appeals this finding, arguing against maintaining pipes "above the ground and underneath" the mobile home. Therefore, the only way to synthesize Appellant's position with that of the Department is to assume Appellant objects to maintaining aboveground, outdoor pipes that are underneath a mobile home. The Department does not require Appellant to maintain aboveground, indoor pipes that are underneath the mobile home. Decision at 12-13.
[4] Appellant also cites its updated sewage and plumbing regulation. This Court refrains from determining whether Appellant's updated regulations comply with the Act until the Department rules, if at all, on the matter and the case is properly before this court pursuant to R.I. Gen Laws § 42-35-15.
[5] In citing the United States Supreme Court, our Supreme Court provides a befitting synopsis of Appellant's equal protection burden.
 "`1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.'" In re Advisory Opinion to the House of Representatives, 519 A.2d 578, 583 (1987) (quoting Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78-79 (1911)).