**James J. FITZPATRICK**

v.

**Edward D. PARE et al.**

**No. 87-227-M.P.**

Supreme Court of Rhode Island

Jan. 22, 1990.

Harry J. Hoopis, Hawkins & Hoopis, Providence, for plaintiff.

George J. Grossi, Providence, for defendants.

## OPINION

SHEA, Justice.

This matter has come before the Supreme Court a second time following our remand in *Fitzpatrick v. Pare*, 552 A.2d 1185 (R.I.1989). The case was remanded with directions that the trial judge create a record and state the factual and legal determinations supportive of his decision.

On May 12, 1984 plaintiff, James J. Fitzpatrick, was involved in an automobile accident on Interstate 195 in Providence. Fitzpatrick allegedly fled the scene of the accident and was charged with violating G.L. 1956 (1982 Reenactment) §§ 31-26-1 and 31-26-3.[1] On July 12, 1984, the Rhode Island Registry of Motor Vehicles notified plaintiff that his license and registration were being suspended for one year effective July 23, 1984 based on G.L.1956 (1982 Reenactment) § 31-11-7(a)(2), as amended by P.L.1984, ch. 196, § 3. Section 31-11-7(a)(2) provides:

---

1. General Laws 1956 (1982 Reenactment) §§ 31-26-1 and 31-26-3 provide generally that a driver involved in an accident resulting in personal injury must stop, provide certain information to occupants of other vehicles and render reasonable assistance.

"The Registry is hereby authorized to suspend the license of an operator or chauffeur without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee:

    \*    \*    \*    \*    \*    \*

(2) Has been involved as a driver in any accident resulting in the death or personal injury of another[.]"

The plaintiff requested a postsuspension hearing pursuant to § 31–11–7(b), which was held on August 10, 1984, before the office of operator control, a division of the State Department of Transportation.[2] Subsequently the hearing officer in a report dated August 23, 1984, concluded that Fitzpatrick had operated the motor vehicle that substantially caused the accident that resulted in the personal injury of another. The original suspension order was therefore upheld in a decision dated August 30, 1984.

The plaintiff then appealed to the Sixth Division District Court and obtained a stay of the suspension order. After certification of the record to the court and submission of legal memoranda, the District Court permanently enjoined the registry from suspending Fitzpatrick's license and registration.

In the original appeal we were unable to reach the merits of the registry's contentions because the District Court's decision was devoid of legal reasoning. On remand the trial judge rendered a bench decision in which he reasoned that the statute was unconstitutional because a license could be suspended:

"[U]pon a showing of a record or other sufficient evidence that the licensee has been involved as a driver in any accident resulting in the death or personal injury of another; whether the person is right or wrong; whether the person jumps out of the sky and hits a car and gets killed; because a person is dead or seriously injured as the result of an accident, the license is suspended. I feel the provision is really an unconstitutional delegation of authority upon an agency to make such a determination without due process and is violative of the Fourteenth Amendment of the Constitution."

On appeal the registry argues that § 31–11–7(a)(2) is both constitutional on its face and as applied in the instant case. Specifically, the registry claims a postsuspension hearing satisfies the requirements of due process. Further the registry maintains that because the statute requires the department to consider the circumstances in which the accident occurred, it is not unconstitutional on its face.

    The first issue we shall address is whether § 31–11–7(a)(2) is so vague as to be facially unconstitutional. The standard used by this court to determine vagueness of a statute is dependent upon the nature of the statute itself; thus, vagueness of a criminal statute will be more closely scrutinized than that of an economic regulation. *City of Warwick v. Aptt*, 497 A.2d 721 (R.I.1985). When a legislative enactment fails to delineate or to suggest any standards and contemporaneously fails to properly delegate rule making powers sufficient to provide the omitted standards, the statute cannot be saved from unconstitutional vagueness. *United Nuclear Corp. v. Cannon*, 553 F.Supp. 1220, 1235 (D.R.I.1982). Furthermore, it is well settled that a statute is unconstitutionally vague if it lacks explicit standards from its application and thus delegates power that enables enforcement officials to act arbitrarily with unchecked discretion. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222, 227–28 (1972).

In the case before us subsection (a)(2) of § 31–11–7 is unconstitutionally vague precisely because it fails to set forth any standard to be used when determining if the driver's license should be revoked. Unlike other subsections of the statute that re-

---

**2.** General Laws 1956 (1982 Reenactment) § 31–11–7(b) provides in part:

    "Upon suspending the license of any person \* \* \* the registry shall immediately notify the licensee in writing, and upon his request shall afford him an opportunity for a hearing as early as practical within not to exceed twenty (20) days after receipt of such request."

quire a finding that the driver committed a specific offense or acted negligently or fraudulently, subsection (a)(2) provides for a suspension merely because one "[h]as been involved as a driver in any accident resulting in the death or personal injury of another." As the trial judge noted, a license could be suspended under this subsection without regard to whether the driver had acted wrongfully. Clearly this failure to set forth any standard to be used when making the decision to suspend a license leads to the possibility that this power will be used in an arbitrary manner. Consequently we are of the opinion that subsection (a)(2) of § 31–11–7 is unconstitutional on its face.

The registry argues that when deciding whether § 31–11–7(a)(2) is constitutionally sufficient, the statute must be read in its entirety. Specifically the registry argues that any defect contained in subsection (a)(2) is cured by the language in the statute that requires the registry to consider the underlying facts of the case before a driver's license is suspended. This language reads as follows:

"Except for subsection * * * (a)(9), such suspension shall be for such length of time, not exceeding one (1) year, as the registry shall determine is necessary in order to protect public safety and welfare based upon its findings of the circumstances under which the offense was committed, the likelihood of recurrence and the deterrent effect that might reasonably be expected to result from the hardship a suspension or prospective suspension would entail."

This argument is not persuasive because rather than provide guidance when determining if suspension is appropriate, these factors serve only to provide the registry with guidelines for determining the duration of the suspension. *Fitch v. Department of Transportation Division of Motor Vehicles*, 535 A.2d 314, 316 (R.I.1988).[3]

The second issue we shall address is the registry's contention that a postsuspension hearing satisfies the requirements of due process. Resolution of this question requires the application of a balancing test and the consideration of a number of factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mackey v. Montrym*, 443 U.S. 1, 10, 99 S. Ct. 2612, 2617, 61 L. Ed. 2d 321, 329 (1979) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed.2d 18, 33 (1976)).

The first step in the balancing process is identification of the nature and the weight of the interest affected by the official action challenged. Here the interest is the driver's interest in continued use of his license pending the outcome of the hearing. The Supreme Court has recognized that this interest is a substantial one for which the state will not be able to make a driver whole for any personal inconvenience and economic hardship suffered by reason of any delay in redressing an erroneous suspension. 443 U.S. at 11, 99 S.Ct. at 2617, 61 L.Ed.2d at 330.

The second stage of the inquiry requires consideration of the likelihood of erroneous deprivation of that interest. In cases in which the decision to suspend or revoke the license is based on a readily ascertainable event, such as a conviction for driving while intoxicated, a moving violation, or a refusal to submit to a breathalyzer test, courts have upheld the constitutionality of statutes that provide only for a postsuspension hearing. *See, Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321

**3.** In cases in which the suspension is predicated upon § 31–11–7(a)(7), which provides for suspension based on a driving offense committed in another state, these factors are considered when determining if suspension is necessary in order to protect public safety and welfare. *Taft v. Pare*, 536 A.2d 888, 891 (R.I.1988).

(1979)(statute mandated prehearing suspension of license for refusal to take a breathalyzer test was not violative of due process); *Dixon v. Love,* 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977)(statute provided for revocation of license without preliminary hearing upon showing of repeated traffic offenses held to be constitutional).

In the case at hand the risk of erroneous deprivation appears to be much greater. As we have noted, § 31–11–7(a)(2) allows the registry to suspend a driver's license without a preliminary hearing simply because the driver has been involved in an accident involving the injury or death of another person. Given the registry's wide discretion under this statute, due process would appear to require that the driver at minimum have an opportunity for a hearing before a license may be suspended.

Although the court recognizes that the third factor, the government's interest in removing dangerous drivers from the road, is undoubtedly significant, we are of the opinion that it does not outweigh the licensee's interest, particularly given the risk of erroneous deprivation in this case.

For the reasons stated, the petition for certiorari is denied, the writ heretofore issued is quashed, and the record certified to this court is remanded to the District Court with our decision endorsed thereon.