In re Advisory Opinion to the Governor
(Section 42-116-40 of DEPCO Act).

**RHODE ISLAND DEPOSITORS
ECONOMIC PROTECTION
CORPORATION et al.**

v.

**Wilhelmina BROWN et al.,
Ernst & Young et al.**

Nos. 94–648–M.P., 94–668–M.P.

Supreme Court of Rhode Island.

May 19, 1995.

Leonard Decof, John S. Foley, Howard Klein, Jeffrey Pine, Atty. Gen., Rebecca Tedford Partington, Sp. Asst. Atty. Gen., Elizabeth Murdock Myers, Providence, for plaintiffs.

Peter A. McGinn, Jerome Snider, New York City, Shelia High King, Kirsten Lacovara, George Vetter, John Bomster, John

Tarantino, Paul Izzo, Erik Lund, Laurence Field, James E. Carroll, Peabody & Arnold, Boston, MA, Gordon Cleary, Kimberly Simpson, John Bulman, Eva Mancuso, Daniel Kolb, John Matson, William P. Hammer, Jr., J. Andrew Heaton, New York City, Nicholas C. Theodorou, Boston, MA, for defendants.

## OPINION

SHEA, Justice.

To His Excellency Lincoln Almond, Governor of the State of Rhode Island and Providence Plantations.

We have received from Your Excellency a request for our written opinion in accordance with article 10, section 3, of the Rhode Island Constitution on the following three questions:

"1. Whether the provisions of R.I. Gen. Laws Section 42–116–40 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or Article I, Section 2 of the Constitution of the State of Rhode Island?

"2. Whether the provisions of R.I. Gen. Laws Section 42–116–40 violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution or Article I, Section 2 of the Constitution of the State of Rhode Island?

"3. Whether the provisions of R.I. Gen. Laws Section 42–116–40 constitute an unlawful bill of attainder in violation of Article I, Section 10 of the [United States] Constitution?"

In addition, on September 29, 1994, plaintiffs Rhode Island Depositors Economic Protection Corporation (hereinafter "DEPCO") and Edward D. Pare, Jr., in his capacity as receiver for the Brown University Employees Credit Union, filed a complaint against certain former officers and directors of the Brown University Employees Credit Union alleging that the directors' negligence in the supervision, management, and operation of the credit union caused its failure and resulted in damages to plaintiffs. On October 14, 1994, defendants filed a third-party complaint for contribution and indemnity against Ernst & Young and certain of its present and former partners. On October 14, 1994, defendants filed a motion to certify questions on the constitutionality of G.L.1956 (1993 Reenactment) § 42–116–40 (hereinafter "DEPCO Act") to this court pursuant to G.L.1956 (1985 Reenactment) § 9–24–27.

On October 17, 1994 plaintiffs filed a similar motion and on the same day filed a motion seeking the Superior Court's approval, pursuant to the DEPCO Act, of a settlement that plaintiffs and defendants had reached. Despite an objection by third-party defendant Ernst & Young, the trial justice entered an order approving the settlement as fair, reasonable, made in good faith, and in the best interests of the moving parties and the receivership estate, and certified to this court pursuant to § 9–24–27 four essentially similar questions for determination. The questions transmitted by the Governor and those certified by the trial justice differ only in that the certified questions also request this court's opinion with respect to whether the DEPCO Act constitutes a law impairing the obligation of contracts in violation of article 1, section 12, of the Rhode Island Constitution. We have consolidated these two proceedings and established a joint briefing schedule for the proponents and opponents of the constitutionality of the DEPCO Act. We are responding to the consolidated matters in the form of an opinion. Our findings shall therefore be legally binding.

Before addressing the questions presented, we feel that it is necessary to present a chronology of the facts and procedural history leading to the issues presented before this court. On January 1, 1991, former Governor Bruce Sundlun proclaimed a banking emergency and ordered the closing of the Rhode Island Share and Deposit Indemnity Corporation (hereinafter RISDIC) and the forty-five financial institutions and credit unions it insured, including Brown University Employees Credit Union. As a result of the closing of the credit unions a financial crisis ensued in which depositors were prevented from withdrawing their funds. In response to the resulting financial crisis, the Rhode Island General Assembly enacted emergency legislation establishing the Depositors Economic Protection Corporation, a public corporation obligated to repay depositors whose deposits had been frozen in the failed institutions. See G.L.1956 (1993 Reenactment) chapter

116 of title 42. DEPCO was charged with the payment of the deposit liabilities of the insolvent financial institutions, the liquidation of their assets, and the pursuit of tortfeasors who contributed to the banking crisis. In addition, DEPCO served as the receiver for RISDIC. The DEPCO legislation also created an entirely new financial institution receivership law, as well as statutory priorities for prompt payment to people whose deposits were left uninsured due to the failure of RISDIC.

In the aftermath of the shutdown of RISDIC and its insureds, the State of Rhode Island established a special commission to investigate the credit union crisis. The commission found fault with former officers and directors of the failed institutions, certain large borrowers, the State Department of Business Regulation, the General Assembly and a governor of the State of Rhode Island who held office during that time. The commission assigned a great level of blame to RISDIC and those persons who occupied prominent positions in the RISDIC hierarchy. The commission also focused on the public accounting firm of Ernst & Young, which had provided accounting services to RISDIC and to many of its insureds, as among the parties deserving special mention.

On February 20, 1992, DEPCO filed a complaint against Ernst & Young in Rhode Island Superior Court charging Ernst & Young with negligence, negligent misrepresentation, and breach of contract. The DEPCO complaint seeks damages which allegedly resulted from the failure of Ernst & Young to properly audit and report the financial condition of the failed institutions. The complaint alleges that Ernst & Young issued unqualified (or insufficiently qualified) audit opinions to RISDIC and a number of RISDIC-insured institutions despite obvious patterns of pervasive lending irregularities.

■ In July of 1993, well after DEPCO initiated suit against Ernst & Young, the General Assembly amended the DEPCO legislation by passing the DEPCO Act, P.L. 1993, ch. 85, § 1. The DEPCO Act provides in part:

"Notwithstanding any provisions of law to the contrary, a person, corporation, or other entity who has resolved its liability to the Rhode Island Depositors' Economic Protection Corporation, the receiver of Rhode Island Share and Deposit Indemnity Corporation or the receiver of any state-chartered financial institution in a judicially-approved good faith settlement shall not be liable for claims for contribution or equitable indemnity regarding matters addressed in the settlement. Such settlement does not discharge any other joint tortfeasors unless its terms so provide, but it reduces the potential liability of such joint tortfeasors by the amount of the settlement.

"The provisions of this section shall apply solely and exclusively to settlement of liabilities to [DEPCO] * * *." Section 42–116–40.

Prior to the passage of the DEPCO Act, a non-settling defendant in a RISDIC case could, if found liable, seek contribution from all other joint tortfeasors, save only those who had entered settlements that explicitly released all claims against all potentially responsible parties for the settling tortfeasor's proportionate share of the overall liability. *See* G.L.1956 (1985 Reenactment) chapter 6 of title 10 (hereinafter Uniform Contribution Among Joint Tortfeasors Act). In essence, the prior contribution law ensured that, if a joint tortfeasor were held responsible for (and paid) more than its ratable share of damages, it could seek contribution from other joint tortfeasors who had not paid their proportionate share of liability. However, under the DEPCO Act a tortfeasor who refuses to settle, but is later found liable at trial, may not bring an action against a settler for contribution. Rather, that tortfeasor may only deduct the full amount of any settlements by joint tortfeasors from the judgment against it.

Two weeks following the approval of the DEPCO Act by the General Assembly, Ernst & Young filed a declaratory judgment action in the Federal District Court for the District of Rhode Island seeking to declare the DEPCO Act unconstitutional. The District Court dismissed the complaint on ripeness and abstention grounds and the First Circuit subsequently affirmed on appeal. *Ernst & Young*

*v. Depositors Economic Protection Corp.,* 45 F.3d 530 (1st Cir.1995).

DEPCO subsequently negotiated the settlement agreement in the Brown University Employees Credit Union case in which the trial justice certified the questions before us. The determination of the constitutionality of the DEPCO Act is the linchpin of the settlement in the underlying cause of action and all future settlements in DEPCO litigation.

I

### Equal Protection

"Whether the provisions of R.I. Gen. Laws Section 42–116–40 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution or Article I, Section 2 of the Constitution of the State of Rhode Island?"

■ The Fourteenth Amendment to the United States Constitution guarantees to all persons within the jurisdiction of any state "the equal protection of the laws." U.S. Const. Amend. XIV, § 1. Article 1, section 2, of the Rhode Island Constitution provides individuals with equal protection guarantees similar to those contained in the United States Constitution. *In Re Advisory from the Governor,* 633 A.2d 664, 669 (R.I.1993); *Kleczek v. Rhode Island Interscholastic League, Inc.,* 612 A.2d 734, 738 (R.I.1992).

In order to determine whether the DEPCO Act satisfies equal protection requirements, we begin with the principle that legislative enactments of the General Assembly are presumed to be valid and constitutional. *Kennedy v. State,* 654 A.2d 708, 712 (R.I. 1995); *Kass v. Retirement Board of the Employees' Retirement System of the State of Rhode Island,* 567 A.2d 358, 360 (R.I.1989). In addition, the party challenging the constitutional validity of an act carries the burden of persuading the court that the act violates an identifiable aspect of the Rhode Island or United States Constitution. *Brennan v. Kirby,* 529 A.2d 633, 639 (R.I.1987).

■ When deciding if a statute complies with equal protection standards, we must examine both the nature of the classification established by the act and the individual rights that may be violated by the act. *Boucher v. Sayeed,* 459 A.2d 87, 91 (R.I. 1983). If a statute either infringes upon fundamental rights or results in the creation of a suspect classification, the statute must be examined with strict scrutiny. *Id; see, e.g., Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978) ("rigorous" or strict scrutiny is applied in analyzing a statute which infringed upon the right to marry); *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (freedom of choice to marry may not be restricted by invidious statutory racial discrimination). If an act employs a gender-based classification, it is subject to a middle-tier scrutiny in which the classification must be substantially related to the achievement of the statutory objective. *Craig v. Boren,* 429 U.S. 190, 204, 97 S.Ct. 451, 460, 50 L.Ed.2d 397, 411 (1976). Lastly, purely economic legislation that does not disadvantage a suspect class or impinge upon a fundamental right passes constitutional muster if a rational basis exists for it. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985).

■ The parties concede that the DEPCO Act does not infringe upon a fundamental right or result in the creation of a suspect classification. Therefore we will address the DEPCO Act as an example of economic legislation entitled to rational basis review. In fact, we have on several occasions analyzed DEPCO legislation as economic law and applied a rational basis analysis in reviewing it. *See In re Advisory Opinion to the Governor (DEPCO),* 593 A.2d 943, 950–51 (R.I.1991) (upholding constitutionality of DEPCO legislation using rational basis review); *In re Advisory Opinion to the Governor (DEPCO II),* 593 A.2d 1356, 1360 (R.I.1991) (same).

The proponents of the DEPCO Act contend that the DEPCO Act is rationally related to the legitimate purpose of resolving the economic consequences of the credit union crisis. They assert that the DEPCO Act provides a necessary incentive to settle claims, and they emphasize that encouraging settlements is a goal that this court has recognized as favored public policy. *Homar, Inc. v. North Farm Associates,* 445 A.2d 288,

290 (R.I.1982). They claim that without this incentive, settlement of liability claims involving directors, officers, accountants, attorneys, appraisers, borrowers, and insurers of over a dozen failed financial institutions will be virtually impossible.

Ernst & Young asserts that although the DEPCO Act may well be designed to promote settlement, the state may not rely upon an illegitimate or invidious goal when distinguishing among similarly situated persons. *Metropolitan Life Insurance Co. v. Ward,* 470 U.S. 869, 883, 105 S.Ct. 1676, 1684, 84 L.Ed.2d 751, 762 (1985); *Zobel v. Williams,* 457 U.S. 55, 65, 102 S.Ct. 2309, 2315, 72 L.Ed.2d 672, 681 (1982). Ernst & Young cites *Boucher,* 459 A.2d at 94, to demonstrate that this court will find legislation unconstitutional even under the minimal standard of rational basis review.

In *Boucher,* we held that amendments to the state's Medical Malpractice Reform Act in the midst of a so-called "Medical Malpractice Crisis" failed to satisfy rational basis review under the equal protection clause because those amendments gave medical doctors and hospitals special treatment unavailable to other tortfeasors and treated medical malpractice plaintiffs differently from other plaintiffs. *Id.* In a dispositive pronouncement in *Boucher* we stated, "[a]bsent a crisis to justify the enactment of such legislation, we can ascertain no satisfactory reason for the separate and unequal treatment that it imposes on medical malpractice litigants." *Id.* at 93.

In the matter before us, it is important to note that defendants in the RISDIC tort cases are insured under "defense-within-limits" or "wasting asset" insurance policies. Under these policies, the insureds' costs of defense, including attorneys' fees, expert witness fees, and other litigation expenses, are paid by the insurance companies and deducted from the policy limits as they are incurred, thereby reducing the amount of insurance coverage available to pay settlements or satisfy judgments. In the words of the First Circuit, "[t]he banks' collapse proved to be a depositor's nightmare but a lawyer's dream." *Ernst & Young,* 45 F.3d at 532.

We cannot ignore the reality of the situation before us. The possibility that the liability insurance of the failed credit unions may be depleted before any judgment is derived from protracted litigation is not out of the realm of possibility. This court is persuaded that encouraging payment of insurance proceeds to DEPCO in the form of settlements, instead of allowing them to be dissipated through payment of costs of defense of protracted litigation, is certainly a legitimate legislative objective.

In examining whether the DEPCO Act bears a rational relationship to this legitimate state purpose, we must determine whether the Legislature "*could* rationally conclude that [the DEPCO Act] would effectuate a resolution to a legitimate problem." *Power v. City of Providence,* 582 A.2d 895, 902 (R.I.1990) (citing *Weinberger v. Salfi,* 422 U.S. 749, 777, 95 S.Ct. 2457, 2472–73, 45 L.Ed.2d 522, 545–46 (1975)). The equal protection safeguard is offended only if an act "rests on grounds wholly irrelevant to the achievement of the State's objective," and "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961). Because we cannot conclude that the DEPCO Act is "wholly irrelevant to the achievement" of the state's objectives, we hold that the DEPCO Act is rationally related to legitimate public purposes and therefore must be sustained against an equal-protection challenge. We therefore hold that the DEPCO Act comports with the requirements of equal protection under both the United States and Rhode Island Constitutions.

## II

### Due Process

"Whether the provisions of R.I. Gen. Laws Section 42–116–40 violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution or Article I, Section 2 of the Constitution of the State of Rhode Island?"

The Due Process Clause of the Fourteenth Amendment provides that "no state shall * * * deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. Due process prohibits legislation that would retroactively unreasonably impair substantive rights, or "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Landgraf v. USI Film Products*, —— U.S. ——, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229, 262 (1994). To comport with the requirements of due process, a statute may not retroactively abrogate a property interest unless that action is, at a minimum, justified by a legitimate legislative purpose furthered by rational means. *Pension Benefit Guaranty Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730, 104 S.Ct. 2709, 2718, 81 L.Ed.2d. 601, 611 (1984). Further, this court when confronted with a due process challenge to a retroactive statute, has traditionally held that the purpose of a statute must be such that, on balance, outweighs the unfairness of retroactivity. *Lawrence v. Anheuser–Busch, Inc.*, 523 A.2d 864, 870 (R.I.1987); *Raymond v. Jenard*, 120 R.I. 634, 639, 390 A.2d 358, 360 (1978).

The first step in our analysis of whether the DEPCO Act is violative of due process is to determine if the Act is indeed retroactive in nature. The proponents of the constitutionality of the DEPCO Act assert that a cause of action for contribution accrues when a party pays more than his or her fair share of the liability, and not when the underlying tort occurs. *See, e.g., Coniaris v. Vail Associates, Inc.*, 196 Colo. 392, 395, 586 P.2d 224, 225 (1978) ("no cause of action [for contribution] accrues to a joint tortfeasor until there has been a judgment against him [or her] or a settlement of the claim"); *Pennsylvania Greyhound Lines, Inc. v. Rosenthal*, 14 N.J. 372, 382, 102 A.2d 587, 591 (1954) (contribution claim "accrues only on the payment by a joint tortfeasor"); *National Mutual Insurance Co. v. Whitmer*, 70 Ohio St.2d 149, 152, 435 N.E.2d 1121, 1123 (1982) (contribution claim "accrues when a party has paid more than his [or her] share of the joint obligation"). Because Ernst & Young did not hold an accrued contribution or indemnity claim as of the statute's effective date, the proponents contend that the statute could not have acted retroactively upon any such claim.

The United States Supreme Court stated that in determining whether a statute is retroactive one must look to see "whether the [statute] attaches new legal consequences to events completed before its enactment." *Landgraf*, —— U.S. at ——, 114 S.Ct. at 1499, 128 L.Ed.2d at 255. In *Nelson v. Ptaszek*, 505 A.2d 1141, 1143 (R.I.1986), we held that a right of contribution exists prior to payment of more than one's pro rata share of a judgment or settlement, and is a claim or cause of action that could be discharged by a general release. It is noteworthy that in *D'Onofrio Construction Co. v. Recon Co.*, 255 F.2d 904, (1st Cir.1958), the First Circuit interpreted Rhode Island law holding that a cause of action for contribution exists if the event has already occurred out of which a common liability may be asserted to have arisen, and if the injured party has already commenced an action against one of the possible joint tortfeasors. *Id.* at 908–09.

In the case at bar it is evident that before the DEPCO Act was adopted, Ernst & Young held a claim for contribution against all potential tortfeasors arising out of their past actions concerning RISDIC and the credit unions. The DEPCO Act proceeded to eliminate this right as against tortfeasors who settle with DEPCO. In fact "[a] majority of the courts that have decided when a contribution cause of action arises have concluded that it arises when the underlying tort is committed." *Lightner v. Duke Power Co.*, 719 F.Supp. 1310, 1315 (D.S.C. 1989). Rhode Island stands with the majority and therefore, in accord with the reasoning of *Landgraf*, we hold that the DEPCO Act indeed has a retroactive effect.

We are also persuaded that Ernst & Young's pre-existing right to contribution is properly viewed as a property interest subject to the protections of due process. A cause of action, even one of uncertain value is indisputably "a species of property protect-

ed by the Fourteenth Amendment's Due Process Clause." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1154, 71 L.Ed.2d 265, 273 (1982). The proponents of the constitutionality of the DEPCO Act urge this court to find that Ernst & Young did not have a "vested" property right to contribution subject to due process protections at the time of the enactment of the DEPCO Act. We have recognized the concept of "vesting" as being merely conclusory and disfavored when considering due process challenges. *Raymond v. Jenard,* 120 R.I. at 638, 390 A.2d at 360 (quoting Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv.L.Rev. 692, 696 (1960)). According to Hochman:

"from an analysis of the cases it becomes apparent that it is impossible to reduce the potentially infinite variety of situations in which the problem of retroactivity can arise to a single common denominator.

However, it is just as clear that the factor most often appearing in these cases is the extent to which the parties have laid reasonable reliance on the law existing at the time of the conduct whose legal consequences the retroactive statute would alter. The importance of this element is apparent when one considers that in very general terms the two major factors to be weighed in determining the validity of a retroactive statute are *the strength of the public interest it serves and the unfairness created by its retroactive operation,* and the reliance of the parties on preexisting law is perhaps the most accurate gauge of the latter." (Emphasis added.) *Hochman,* 73 Harv.L.Rev. at 727.

The proponents of the DEPCO Act assert that it is ludicrous for Ernst & Young to argue that they relied on the prior contribution statute in committing negligent acts. In the case at bar, Ernst & Young asserts that they relied on the existing Rhode Island contribution system at the time it began its work for RISDIC and the credit unions. Ernst & Young argues that it considered its risks, including litigation risks, as part of its determination of whether to accept RISDIC and the credit unions as clients. Its argument follows that if it had been aware that

its work for RISDIC and the credit unions would be subject to different and harsher rules than its work for other Rhode Island clients, and that its litigation exposure could increase dramatically, it might well not have taken them as clients as it did.

We find this reasoning less than persuasive. It is highly unlikely that a sophisticated accounting firm would rely upon speculative joint tortfeasor contribution in deciding to perform negligent acts.

Although a statute has retroactive effect that implicates property rights, it does not necessarily follow that the statute is unconstitutional. *See Brennan v. Kirby,* 529 A.2d at 640–641 (upholding statutory denial of seniority rights provided to combat veterans); *Raymond v. Jenard,* 120 R.I. at 640, 390 A.2d at 361 (finding that public interest in applying comparative negligence outweighed unfairness because defendant could not have relied on contributory negligence rule in giving firecracker to minor). This court has traditionally employed a balancing test in cases involving retroactive statutes in which the court weighs the public interest in retroactivity against the unfairness created. The unfairness of a retroactive statute is "measured best by the party's reliance on the preexisting state of the law." *Brennan,* 529 A.2d at 640. If the unfairness outweighs the benefit, the statute lacks a rational basis. *Lawrence,* 523 A.2d at 870–71.

Ernst & Young argues that the DEPCO Act's alteration of the liability scheme represents a "naked exercise of governmental power far removed from the general economic or social legislation that is entitled to a presumption of constitutionality." Ernst & Young contends that a participant to a contest, such as DEPCO, does not have the right to change the rules in the middle of a contest for no better reason than to advance its own position.

Ernst & Young argues that the Supreme Court of Virginia addressed the issue presented in the case at bar, holding that the retroactive abrogation of an inchoate cause of action for contribution violates due process. *Shiflet v. Eller,* 228 Va. 115, 319 S.E.2d 750 (1984). In *Shiflet,* the case presented a situation in which parties were involved in an

automobile accident in 1977. *Id.* at 117, 319 S.E.2d at 752. In 1979, the Virginia Legislature enacted a statute, similar to the DEPCO Act, that barred non-settling parties from seeking contribution from settling parties, but provided for a *pro tanto* reduction in the non-settling parties' liability. *Id.* In *Shiflet,* the Supreme Court of Virginia, focusing on whether the right to contribution involves substantive or procedural rights, was persuaded that if any substantive right is involved, "then any statute affecting that right cannot be applied retroactively to a cause of action which accrued prior to enactment of the statute in question." *Id.* at 120, 319 S.E.2d at 753. The court concluded that the legislation affected the substantive right to contribution, and therefore was violative of due process. *Id.* at 123, 319 S.E.2d at 755.

■ We are not persuaded by *Shiflet.* Rhode Island jurisprudence in the area of due process challenges to retroactive legislation is characterized by a balancing test not evident in *Shiflet.* There is a great public interest in minimizing the taxpayers' liability for the depositor bailout. This legislation was adopted subsequent to a crisis of monumental proportions affecting the well-being of thousands of Rhode Island depositors. We agree that facilitating settlement of the DEPCO litigation in light of the depletion of the credit union insurance policies would ultimately relieve to some extent the taxpayers' cost of the bailout. Balancing this public interest against the alleged unfairness to Ernst & Young to be denied its pre-existing right to contribution, we come to the conclusion that the State of Rhode Island's interest prevails. Therefore we hold that the DEPCO Act does not offend the Due Process Clause of the Fourteenth Amendment to the United States Constitution nor the Rhode Island Constitution.

### III

### Bill of Attainder

"Whether the provisions of R.I. Gen. Laws Section 42–116–40 constitute an unlawful bill of attainder in violation of Article I, Section 10 of the [United States] Constitution?"

■ The United States Constitution provides in part that "[no] state shall * * * pass any bill of attainder." U.S. Const. Art I, § 10. A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Nixon v. Administrator of General Services,* 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867, 907 (1977). The prohibition against bills of attainder was intended to safeguard against legislation penalizing a particular person or group by taking away life, liberty or property because the Legislature judged them guilty of conduct deserving punishment. *United States v. Lovett,* 328 U.S. 303, 317, 66 S.Ct. 1073, 1080, 90 L.Ed. 1252, 1260 (1946). Ernst & Young asserts that the DEPCO Act is a bill of attainder because, despite its general language, the Act seeks to punish Ernst & Young for its role in connection with the collapse of the RISDIC system by limiting Ernst & Young's contribution rights.

■ To determine whether a statute unconstitutionally inflicts punishment, the United States Supreme Court has established a three-part inquiry:

"(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'" *Selective Service System v. Minnesota Public Interest Research Group,* 468 U.S. 841, 852, 104 S. Ct. 3348, 3355, 82 L.Ed.2d 632, 643 (1984).

The denial of access to the courts, or prohibiting a party from bringing an action, has been defined as punishment by bills of attainder. *See, e.g., Pierce v. Carskadon,* 83 U.S. (16 Wall.) 234, 238–39, 21 L.Ed. 276, 277–78 (1873); *Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 320–21, 18 L.Ed. 356, 362 (1867) (denying confederate sympathizers any access to court held unconstitutional). However, the shifting of economic burdens so as to place a greater share on a particular party is generally not the type of punishment consid-

ered violative of the bill of attainder clause. *See Fresno Rifle and Pistol Club, Inc. v. Van De Kamp,* 965 F.2d 723, 728 (9th Cir.1992); *United States v. Monsanto Co.,* 858 F.2d 160, 175 (4th Cir.1988), *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3156, 104 L.Ed.2d 1019 (1989) (holding that the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) did not constitute an unlawful bill of attainder). In *Monsanto,* the Court of Appeals for the Fourth Circuit upheld the constitutionality of CERCLA in the face of bill of attainder challenges. The court held:

> "CERCLA does not exact punishment. Rather it creates a reimbursement obligation on any person judicially determined responsible for the costs of remedying hazardous conditions at a waste disposal facility. The restitution of cleanup costs was not intended to operate, nor does it operate in fact, as a criminal penalty or punitive deterrent." *Monsanto,* 858 F.2d at 174–75.

Likewise we hold that the DEPCO Act is intended to promote the settlement of claims, not operate as a criminal penalty.

 The second element considers whether, viewing the Act reasonably and in light of the type and severity of the burdens imposed, the Act furthers a nonpunitive purpose. *Selective Service System,* 468 U.S. at 852, 104 S.Ct. at 3355, 82 L.Ed.2d at 643. The proponents of the DEPCO Act contend that the Act is designed to promote settlements, decrease the amount and cost of litigation relating to the RISDIC collapse, thus saving the taxpayers of Rhode Island. Given the DEPCO Act's goal of encouraging settlements and saving the amount and cost of litigation, the statute could reasonably be said to further non-punitive legislative purposes.

 Finally, the court must consider the argument that the Rhode Island General Assembly fostered an intent to punish Ernst & Young through the enactment of the DEPCO Act. "Judicial inquiries into [legislative] motives are at best a hazardous matter," when bill of attainder challenges are brought before the courts. *See Planned Parenthood, Inc. v. Wichita,* 729 F.Supp. 1282, 1290 (D.Kan.1990) (quoting *Flemming v. Nestor,* 363 U.S. 603, 617, 80 S. Ct 1367, 1376, 4 L.Ed.2d 1435, 1448 (1960)). Even if there were comments by legislators that a specific person or class of persons was a target of the DEPCO Act, this alone would not be sufficient to prove that the DEPCO Act was a bill of attainder. *See Long Island Lighting Co. v. Cuomo,* 666 F.Supp. 370, 403 (N.D.N.Y. 1987), *vacated in part, appeal dismissed,* 888 F.2d 230 (2d Cir.1989). Neither the Legislature nor this court could accurately predict whether the DEPCO Act will work to the advantage or disadvantage of Ernst & Young or any other party. Consequently no punitive motive can be discerned.

 The Rhode Island General Assembly has no formal record of legislative history accompanying this or any other act it has ever passed. However, it is important to note that the bill of attainder clause is rarely used to invalidate legislation. The policy behind its sparing use is that:

> "[A]ll modern legislation regulating the economic activities of specific groups might be considered 'punishments,' and the bill of attainder clause, if read too broadly, could be used to cripple the ability of legislatures to respond to some perceived social or economic problem by imposing restrictions or limitations on individuals, corporations, or industries which are deemed responsible for the problem." *Cuomo,* 666 F.Supp. at 403.

The burden thrust upon Ernst & Young by the DEPCO Act is choosing whether to settle the case, or continue its defense, with the potential of increased exposure if DEPCO enters into settlement agreements with other joint tortfeasors. The burden faced by Ernst & Young is no different from the burden faced by other defendants in DEPCO suits. For these reasons and from a plain reading of the DEPCO Act, we do not find a legislative intent to punish Ernst & Young. Therefore, we hold that the DEPCO Act cannot be construed as an unlawful bill of attainder.

## IV

### Contract Clause

"Whether the provisions of R.I. Gen. Laws § 42–116–40 * * * constitute a law impair-

**106**

ing the obligation of contracts in violation of Article I, Section 12 of the Constitution of the State of Rhode Island?"

The United States and Rhode Island Constitutions provide that no "law impairing the obligation of contracts, shall be passed." U.S. Const., Art. I, § 10; R.I. Const. art. 1, § 12. In *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), the United States Supreme Court announced the following three-part test to determine whether legislation unconstitutionally impairs the obligation of contracts. First, has the state law in fact substantially impaired a contractual relationship? *Id.* at 411, 103 S.Ct. at 704, 74 L.Ed.2d at 580. Second, if the law constitutes a substantial impairment, can the state show a legitimate public purpose behind the regulation, "such as the remedying of a broad and general social or economic problem"? *Id.* at 411–12, 103 S.Ct. at 704–05, 74 L.Ed.2d at 581. Third, is the legitimate public purpose sufficient to justify the impairment of the contractual rights? *Id.* at 412, 103 S.Ct. at 705, 74 L.Ed.2d at 581.

At the outset, we see no contractual right that is impaired by this legislation. The Uniform Contribution Among Joint Tortfeasors Act, G.L.1956 (1985 Reenactment) chapter 6 of title 10, as the common law that preceded it (wherein no contribution was provided among joint tortfeasors), arises out of the law of the state and not from any private agreement. We have previously stated in a contract clause challenge to DEPCO legislation that "even if we were to find an impairment of the contractual relationship, that impairment would be sufficiently justified by the legitimate public purpose of returning funds to deposit creditors and eventually to the Rhode Island economy." *In Re Advisory Opinion to the Governor (DEPCO)*, 593 A.2d 943, 949 (R.I.1991). Likewise, in the controversy before us there is a legitimate purpose of returning funds to the public. Therefore the DEPCO Act is not a law impairing the obligation of contracts in violation of the State and Federal Constitutions.

For the foregoing reasons we are of the opinion that the DEPCO Act is constitutional. The questions transmitted by the Governor and the questions certified by the Superior Court are answered in the negative.