DECISION
Before this Court is a motion for declaratory judgment by Century Electric Co. (Defendant). Defendant asks this Court to declare G.L. 1956 (1985 Reenactment) § 9-1-52
unconstitutional and to dismiss the action brought by James J. O'Rourke, Inc. (Plaintiff). Jurisdiction is pursuant to G.L. 1956 (1985 Reenactment) § 9-30-1 et seq.
FACTS/TRAVEL
In February 1995, Defendant was awarded a contract for the installation of an electrical system at the Westerly public schools (Project). Defendant was the low bidder on the Project. Plaintiff allegedly was the second lowest bidder on the Project. Subsequently, after the work had been completed, Defendant entered into a consent order with the Rhode Island Department of Labor in which Defendant admitted that it had "failed to pay the prevailing wage rate" to several of its employees who had worked on the Project.
On September 14, 1995, Plaintiff filed an action pursuant to § 9-1-52, claiming that Defendant had violated the prevailing wage law and, under the statute, Plaintiff was entitled to damages as a result of not being awarded the contract relative to the Project.
In response, Defendant filed the motion for declaratory judgment now before this Court. Defendant argues that §9-1-52 is unconstitutional as it violates the (1) equal protection clause because § 9-1-52 does not further a rational state purpose; (2) the due process clause because it is void for vagueness; (3) the contract clause; and (4) the prohibition against bills of attainder.
EQUAL PROTECTION
Defendant contends that § 9-1-52 violates the equal protection clause of the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Rhode Island Constitution. Defendant claims that the statute does not further a legitimate state purpose and serves no rational state interest. Plaintiff responds that the statute does further a rational purpose by providing a means to ensure compliance with the prevailing wage law set out in § 37-13-1 et seq.
A "legislative enactment is presumed to be constitutional . . . ." See, In Re Advisory Opinion to theGovernor (Depco), 593 A.2d 943, 946 (R.I. 1991). "The challenging party must convince the court beyond a reasonable doubt . . ." that the challenged act violates the Rhode Island or United States Constitutions. Id. A court will seek to adopt a construction that avoids a finding of unconstitutionality.Hometown Properties v. Fleming, 680 A.2d 56, 60 (R.I. 1996).
"In constructing a statute, our task is to effectuate the intent of the legislature." D'Ambra v. North Providence SchoolCommittee, 601 A.2d 1370, 1374 (R.I. 1992). The words in the statute must be given their plain and ordinary meaning. Id.
In an equal protection analysis of purely economic legislation, a statute is constitutional "if a rational basis exists for it." Rhode Island Depositors Economic ProtectionCorporation v. Brown (hereinafter DEPCO v. Brown), 659 A.2d 95, 100 (R.I. 1995). The court must decide whether the legislation bears a rational relationship to a legitimate state purpose. Id.
at 101. A statute violates the equal protection clause only if it "rests on grounds wholly irrelevant to the achievement of the State's objective . . . ." Kennedy v. State, 654 A.2d 708, 712 (R.I. 1995) (quoting McGowan v. Maryland, 366 U.S. 420, 425-26, 81 S.Ct. 1101, 6 L.Ed.2d 393, 399 (1962)).
The State's objective for a statute can be gleaned from the words of the statute itself. See DEPCO v. Brown, supra at 105 ("The Rhode Island General Assembly has no formal record of legislative history accompanying this or any other act it has ever passed.") Section 9-1-52 entitled "cause of action for contractor" states:
 "whenever a contractor or subcontractor, having been awarded said contract as the lowest qualified bidder, violates the state's prevailing wage, a cause of action shall be for the next lowest qualified bidder for any and all damages incurred as the result of not being awarded said contract."
In looking at the plain meaning of the words, as required underD'Ambra, it is clear that the statute creates a mechanism for enforcing the State's prevailing wage law. This is a purely economic purpose. The term "prevailing wage" is found in §37-13-1 et seq. Under § 37-13-1 et seq. contractors for public works contracts must pay prevailing wages, as defined by the director of the labor department, to their employees. The requirement to pay prevailing wages is limited to public works contracts. See § 37-13-3.
In construing the intent of the Legislature, courts often look at other related legislation. See Cupertino Sanitary Dist.v. Board of Supervisors, 25 Cal.Rptr. 8, 12 (1st Dist. App. Div. 2 1962). In comparing the language of § 9-1-52 with the legal framework set out in § 37-13-1 et seq., one finds that the state's objective in § 9-1-52 is to ensure the payment of "prevailing wages" to employees who work on public works projects. Such an objective is a legitimate state goal. See LongIsland R. Co. v. Department of Labor, 256 N.Y. 498, 177 N.E. 17
(1931). Many other jurisdictions have prevailing wage requirements. Although no other jurisdiction has been called to the Court's notice where business competitors are given a role in the enforcement apparatus. See generally Public Works-PrevailingWage Law, 18 A.L.R.3d 944.
Allowing the second lowest bidder a cause of action against the low bidder who has violated the state's prevailing wage provides a rational means to effectuate the state's objective of maintaining "prevailing wages" for all public works employees. The second lowest bidder is damaged by a low bid which envisions illegal, substandard wages. The possibility that the second lowest bidder can recover his damages from the low bidder creates a powerful incentive for compliance with the prevailing wages statute. Other third party actions have served as enforcement mechanisms. See People v. Fiorini, 574 N.E.2d 612 (Ill. 1991) (upheld third party complaint against third party defendant who allegedly violated state pollution laws).
By its plain meaning, § 9-1-52 rationally furthers a legitimate State objective. Because this Court finds that the provisions of § 9-1-52 are not "wholly irrelevant" to the State's purpose, Kennedy supra, § 9-1-52 does not violate the equal protection clause.
DUE PROCESS
Defendant next argues that § 9-1-52 is unconstitutionally vague in violation of the due process clause of the Fourteenth Amendment of the United States Constitution and Art. 1, Section 2 of the Rhode Island Constitution. Defendant asserts that §9-1-52 sets forth no standards for the nature of the proceedings and no parameters for assessing damages. In addition, Defendant argues that § 9-1-52 effects a taking in violation of the due process clause. Plaintiff answers that the statute sufficiently informs the public of its scope and meaning.
A statute is unconstitutionally vague if "its wording fails to alert the public of the statute's scope and meaning." City ofWarwick v. Aptt, 497 A.2d 721, 724 (R.I. 1985). A statute which fails to delineate any standards is unconstitutionally vague.Fitzpatrick v. Pare, 568 A.2d 1012, 1013 (R.I. 1990). A statute must contain language "commonly understood by persons of ordinary intelligence." Aptt, 497 A.2d at 724. A court subjects civil statutes "to a lesser standard of scrutiny for vagueness" than criminal statutes. Id.
Section 9-1-52 plainly states the standard by which the second lowest bidder will have a cause of action. If the low bidder violates the State's prevailing wage, then the second lowest bidder will have an action for his damages. The second lowest bidder must prove that the low bidder violated the prevailing wage law. Unlike in Fitzpatrick, supra, where pursuant to statute, a driver's license was suspended simply because the driver was involved in an accident with injury resulting, §9-1-52 requires a finding that the low bidder violated a specific law, namely the prevailing wage law. Such a provision offers a constitutionally definite standard. Fitzpatrick, 568 A.2d at 1013-14.
The statute also has an implied scienter requirement. Under § 37-13-6, public authorities must specify the prevailing wage rate in their call for bids. This puts the low bidder on notice as to the prevailing wage rate. When the low bidder pays its employees it knows or should know whether it is violating the prevailing wage law. A statute with an implied scienter requirement can survive a vagueness challenge. See Village ofHoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 502, 102 C. Ct. 1186, 1196, 71 L.Ed.2d 362, 374 (1982). As discussed previously, § 37-13-1 et seq. is a related statute which illuminates the State's objectives for § 9-1-52.
Section 9-1-52 specifies that the damages flow "as the result of not being awarded said contract." This section forms a sufficiently clear prescription for the assessment of damages. Courts have inherent power to determine what compensable damages will make a plaintiff whole. See McNeil v. Lyons, 20 R.I. 672,40 A. 831 (1898).
"It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." State v. Fonseca,670 A.2d 1237, 1240 (R.I. 1996) (quoting United States v.Mazurie, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706, 713 (1995)). In examining the facts of the instant case, this Court finds that § 9-1-52 clearly informed Defendant as to the possible consequences involved if Defendant failed to pay the prevailing wage to its employees. Defendant entered into a consent order with the Rhode Island Department of Labor in which it admitted having knowledge of the prevailing wage law and admitted that it failed to pay the prevailing wage rate. Section9-1-52 plainly allows a cause of action by the second lowest bidder against the low bidder who violates the prevailing wage.
In determining whether there has been an unconstitutional taking, one examines three factors: "(1) the character of the governmental action, (2) the economic impact of the regulation on the claimant, and (3) the extent to which the regulation has interfered with distinct investment-backed expectations." DepcoI, 593 A.2d at 949. "Contract rights that do not create interests in specific property, however, remain subject to alteration by paramount federal or state power exercised for public purposes."Id.
In the instant case, no property has been physically invaded or appropriated. An unconstitutional taking is found more readily when property is physically appropriated. Id. Economic impact and investment-backed expectations are factors which are not pertinent to the present situation. A new cause of action has been created for which the takings clause is not implicated. Defendant cannot claim an unjust taking from § 9-1-52 when this statute merely provides a cause of action under which Defendant possibly could be found liable to Plaintiff. SeeSusterick v. Com. Dept. of Transportation, 374 A.2d 749 (Pa. Cmwlth. 1977) (claim of negligence is outside the scope of an eminent domain proceeding).
CONTRACTS CLAUSE
Defendant further argues that § 9-1-52 impairs the contractual relationship that it had with Gilbane Building Company (the prime contractor) on the Project. Defendant says that if Plaintiff is successful, Defendant will lose all benefit from its Project contract. Defendant states that there is no legitimate public purpose for § 9-1-52. Plaintiff argues that § 9-1-52 does not impair Defendant's contract with Gilbane and does not interfere with payments by Gilbane.
The contract clause specifies, "no state shall . . . pass any . . . law impairing the obligation of contracts . . . ." United States Constitution, Art. I, § 10. Article I, Section 12 of the Rhode Island Constitution has a similar prohibition. "Although the language of the contract clause is facially absolute, its prohibition must be accommodated to the inherent police power of the State . . . ." Energy Reserves Group, Inc. v.Kansas Power Light Co., 459 U.S. 400, 410, 103 S.Ct. 697, 704, 74 L.Ed.2d 569, 580 (1983). The court balances the contract clause with the state police power interest. Id. The three factors to consider in determining whether the contract clause has been violated are as follows: (1) whether the state law substantially impairs a contractual relationship; (2) if a substantial impairment is found, the state must have a legitimate public purpose for the regulation; (3) the legitimate public purpose must be served by regulation which is based upon reasonable conditions and of appropriate character. Id. at 411-412.
This Court finds that § 9-1-52 does not substantially impair Defendant's contract. Section 9-1-52 creates a cause of action only if Plaintiff proves that Defendant has violated the prevailing wage law. Plaintiff still must prove damages, and there may be factors to mitigate the damage award. Defendant's contractual relationship remains intact; however, Defendant may owe damages because of its failure to pay its employees the prevailing wage.
Historical regulation of the industry is a relevant factor in assessing impairment of contract. "In determining the extent of impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past."Id. In the instant case, historically public works contractors can expect numerous conditions and regulations upon their contractual relationships in public works projects. In light of this past history and the fact that § 9-1-52 merely creates a cause of action which does not directly limit the contract, this Court finds that there is not a substantial impairment to Defendant's contractual relationship with respect to the Project and with respect to Gilbane (the prime contractor).
Even if this Court were to find a substantial impairment, that impairment would be justified by a legitimate public purpose and rational means. As discussed previously, the goal of ensuring that public works employees are paid a reasonable, prevailing wage is a legitimate State purpose. Section 9-1-52 provides a rational enforcement mechanism.
BILLS OF ATTAINDER
Finally, Defendant argues that § 9-1-52 inflicts punishment upon a successful bidder without the protection of a judicial trial, in violation of Article I, Section 10 of the United States Constitution which prohibits states from passing bills of attainder. Plaintiff asserts that § 9-1-52 does not punish Defendant and thus does not qualify as a bill of attainder.
A bill of attainder "legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." Nixon v.Administrator of General Services, 433 U.S. 425, 468, 97 S.Ct. 2777, 2803, 53 L.Ed.2d 867, 907 (1977). In deciding whether a statute is an illegal bill of attainder the Court must examine three factors.
 "(1) Whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) whether the legislative record evinces the legislature's intent to punish." Selective Service System v. Minnesota Public Interest Research Group, 468 U.S. 841, 852, 104 S.Ct. 3348, 3355, 82 L.Ed.2d 632, 643 (1984).
"The denial of access to the courts, or prohibiting a party from bringing an action, has been defined as punishment by bills of attainder." DEPCO v. Brown, supra at 104. In the instant case, § 9-1-52 creates an action. Section 9-1-52 gives Defendant the opportunity to prove that it did not violate the prevailing wage and also the opportunity to mitigate damages. Defendant has access to judicial process under § 9-1-52.
Traditionally, legislation which shifts economic burdens and liabilities has not been considered violative of the bill of attainder clause. Id. at 104-05. Section 9-1-52 places economic liability on Defendant if it has violated the prevailing wage. Such an assessment of liability is remedial in effect as it seeks to make whole the second lowest bidder who was beaten out on a public works contract by the low bidder who subsequently did not comply with the prevailing wage law. A remedial statute does not exact punishment. See United States v. Monsanto Co., 858 F.2d 160, 175 (4th Cir. 1988). The State's objective of ensuring that prevailing wages are paid to public works employees is a nonpunitive purpose.
The final factor to consider in a bill of attainder challenge is whether the record evinces an intent to punish. Nothing in the proceedings before this Court indicates any special motive or intent for the General Assembly to single out Defendant or Defendant's class for punishment. Defendant has failed to meet its burden to demonstrate beyond a reasonable doubt that §9-1-52 violates the bill of attainder clause. Because §9-1-52 is not punitive and affords an opportunity for judicial proceedings, it does not violate the bill of attainder clause.
CONCLUSION
This Court declares, pursuant to its authority under §9-30-1 et seq., that § 9-1-52 does not violate the equal protection clause, the due process clause, the contract clause, and the prohibition against bills of attainder as specified in the United States and Rhode Island Constitutions. Accordingly, Defendant's motion for dismissal of Plaintiff's action is denied.
Counsel for Plaintiff shall prepare and present upon notice to counsel for the Defendant an appropriate judgment for entry.