DECISION
This is an application for preliminary injunction to prohibit the defendant from foreclosing a mortgage it holds on real estate, known as "Sears Plaza" on North Main Street in the City of Providence. The plaintiff executed the mortgage to Marquette Credit Union, (hereinafter simply "Marquette") on August 7, 1990 to secure the plaintiff's payment of a note issued by the plaintiffs to evidence its obligation to repay funds loaned to it by Marquette pursuant to a loan agreement entered into on that same day.
It is undisputed that Marquette loaned the plaintiffs approximately $2.2 million pursuant to the loan agreement. On January 1, 1991, Governor Bruce Sundlun issued an Emergency Order pursuant to G.L. 1956 (1989 Reenactment) § 19-18-1 which in effect closed Marquette. Thereafter Marquette made no further advances under the loan agreement and the plaintiffs made no further payments on their indebtedness.
On May 2, 1991 the Director of the State Department of Business Regulations was appointed temporary receiver of Marquette pursuant to § 19-15-1, as amended by P.L. 1991, ch. 3,sec. 2. On May 17, 1991, his appointment was made permanent. In the Order of his appointment the receiver was vested with all of Marquette's right, title and interest in and to its property and effects (§ 19-15-2) and was empowered to sell and convey his right, title and interest in Marquette's property, including the note and the loan agreement (together all the other loan documents). (§ 7-1.1-90.1).
On May 22, 1992, this Court entered an Order which authorized the receiver to transfer all the assets of Marquette to the Rhode Island Depositors Economic Protection Corporation (DEPCO), including the note and the loan agreement with the plaintiff, together with all the other documents evidencing security for the plaintiff's indebtedness to Marquette, free and clear of all claims and counterclaims. DEPCO, and its successors and assigns, did not by receiving those assets become liable under that Order for any claims against Marquette or for any defaults by Marquette. Nor did DEPCO then or thereafter assume any liabilities of Marquette.
The record is not clear whether the plaintiff was made a party in interest to the proceedings which culminated in the May 22, 1992 Order or whether or not it had notice of the pendency of the application for that Order. Nor is it clear whether or not the plaintiffs had notice of the entry of that Order. The record is clear, however, that the plaintiffs did file a proof of claim in the Marquette receivership on May 29, 1992, within the appeal period from the entry of the Order on May 22, 1992, seven days before. In any event, the plaintiffs did not object to or appeal from the entry of that Order, so far as appears from the record in this case.
As of June 24, 1992, pursuant to the agreement approved by the Court on May 22, 1992 the receiver sold and transferred Marquette's note, mortgage and loan agreement and other security documents to DEPCO. DEPCO expressly reserved its statutory right under § 42-116-6(b) to acquire these assets without assuming any of Marquette's liabilities. On March 30, 1994 DEPCO assigned and transferred the loan documents, including the mortgage, the foreclosure of which the plaintiffs seek to enjoin here, as well as the notes and loan agreement, which the mortgage secured, together with rent assignments, guaranties and other documents, referred to collectively as "The Hillside Loan Documents," to the defendant.
On May 17, 1995 the defendant notified the plaintiffs that they were in default of their obligations under the note and demanded payment of the entire balance due, together with interest, costs, expenses and attorneys fees. The defendant also expressed its intention to proceed without further notice to foreclose the mortgage which secured the indebtednesses evidenced by the note. On May 26 and June 1, 1995 the plaintiffs were notified that a foreclosure sale would be held on July 14, 1995.
On July 12, 1995 a temporary restraining order was entered prohibiting foreclosure pending hearing on the plaintiffs' application for a preliminary injunction. The parties have exchanged barrages of legal memoranda, the last shot having been fired by the defendant on January 2, 1996.
In essence, the plaintiffs contend that Marquette substantially breached its obligations under the loan agreement to advance funds as required by the plaintiff to finance the development of the Sears Plaza property. As evidence of that breach the plaintiffs point to the undisputed facts that Marquette had not advanced all the funds it had committed in the loan agreement when it was closed on January 1, 1991. Obviously, anticipating Marquette's inability to resume funding the loan after January 1, the plaintiffs put Marquette, and its putative liquidators or successors, on notice on January 4, 1991 that Marquette's failure to fund the project would result in unliquidated damages. The letter also put Marquette and its successors on notice of the plaintiffs' claim of defenses to the note.
On September 17, 1993, the plaintiffs notified the defendant, also, of the claims they were asserting against Marquette's receiver, which they asserted as claims and defenses with respect to the note and loan documents, and referred to its letter of January 4, 1990 (1991). They advised the defendant that the plaintiffs had not made any payment on the notes and that no demand for payment or any other attempt to collect the note had up to then been made by any holder.
The plaintiffs claim that the failure of Marquette to continue to fund the project amounts to such a substantial unexcused breach of contract as to excuse the plaintiffs from their obligation to re-pay the money loaned to them by Marquette. They say they are entitled to recoup their unliquidated damages against the liquidated claims of Marquette, and its receiver, and DEPCO, and the defendant.
The defendant argues that its rights under the note and loan agreement, which are deemed admitted by an assertion of a claim of recoupment, Villa v. Hedge, 96 R.I. 52, 56 (1963), are immunized by several applicable doctrines and statutes. In addition, the defendant points out that Marquette, itself, was excused from completing its performance under the loan agreement by reason of the government action taken by the Governor in closing Marquette and the Courts in appointing the receiver under the statutes. It also argues that Marquette's failure to continue funding the loan agreement, whether or not it was a breach of any obligation on the part of Marquette binding on it, was justified by the plaintiffs' breaches of their own obligations under the agreement.
According to the defendant, approximately $381,000 of the funds advanced by Marquette to the plaintiffs were not applied to the renovation of the Sears Plaza as required by the terms of the Construction Loan portion of the loan agreement. The defendant bases this conclusion substantially on the Report of the SelectCommission on the Lending Practices of the RISDIC-InsuredFinancial Institutions: Phase III, Findings and Recommendations:
(hereinafter "RISDIC Commission Report"). Furthermore, the plaintiffs were required to furnish "a true, correct and complete copy" of their leases with each tenant or prospective tenant in the Sears Plaza, as a condition for certain advances by Marquette. The defendant contends that the so-called "Technodome" lease was not a "true" copy of a genuine lease, since the putative lessee, Technodome, Inc., did not exist at the time of the execution of the lease. Marquette, nonetheless, advanced $500,000 in reliance on the lease. According to the defendant's argument the use of the "Technodome" lease by the plaintiff as a means to obtain an advance violated several of the express and implied covenants of the loan agreement and was a misrepresentation of a material fact relied on by Marquette to its detriment.
The Court rules that the RISDIC Commission Report will be admissible in evidence as an exception to rule against hearsay under Rule 803(8) (B) and (C), as a report of a public agency setting forth "matters observed pursuant to duty imposed by law as to which matters there was a duty to report," and in this civil action "factual findings resulting from an investigation made pursuant to authority granted by law." Beech Aircraft Corp.v. Rainey, 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988). The Court is further satisfied that at a trial on the merits the sources of information and the circumstances will not be found to indicate any lack of trustworthiness. Based on this evidence, and an utter lack of any persuasive evidence to the contrary, other than the plaintiffs' requests to be paid, by requisition to Marquette, the Court is satisfied that, if the issue of who breached first ever becomes material, the Court hearing the merits will decide that, at the time Marquette closed, the plaintiffs had violated the terms of their obligations under the loan agreement.
The Court has carefully considered the Decision of Mrs. Justice Goldberg in State v. Procaccianti, et al., P1/93-3690 B 
C, September 18, 1995. In that case the Court granted a motion for acquittal under Rule 29, Rules of Criminal Procedure, because the evidence regarding the Technodome lease was insufficient to sustain a conviction on a charge of obtaining money under false pretenses against the principal of one of the plaintiffs. Of course, neither the defendant, nor any of its predecessors in title, were actual parties to the criminal prosecution so the decision does not have the dispositive issue-determinative weight as would be accorded under the doctrines of res judicata or collateral estoppel. While the defendant's claim that the purported lease with Technodome was not a "true" copy of a genuine lease in this case is closely related to the State's claim in the prosecution that the submission of the purported lease was a "false pretense" under the statute, the two claims are different and are required to be proved by differing burdens. In addition, in the criminal prosecution the State was required to prove fraudulent intent, as an essential element of the crime charged. Since the defendant here has no burden to prove any culpable state of mind, the decision does not have significant persuasive force in consideration of the plaintiffs' likelihood of success on the merits of its claim that any breach by Marquette was unjustified.
On the merits of this case, the plaintiffs will have the burden of proof on the issue of their claimed right of recoupment for damages arising out of Marquette's failure to continue to fund the project in order to overcome the defendant's prima facie
claim of an admitted default of the loan obligation evidenced by the note and secured by the mortgage. This Court has carefully reviewed the affidavits and other sworn deposition and trial testimony from other litigation and the documentary exhibits. The Court concludes that the plaintiffs have failed to show that, even if allowed to recoup their claimed unliquidated damages against the liquidated damages assigned by DEPCO to the defendant, that they will succeed in enjoining the defendant permanently from foreclosing the mortgage. First, even if they are entitled to damages for breach of contract or tortious interference, they have an adequate remedy at law against any party who may be legally liable to them for those money damages, irrespective of the mortgage foreclosure. Even more important, the Court finds that a fact-finder will conclude that Marquette, and its successors, including the defendant were justified in fact in refusing to continue to fund this project.
The Court has also carefully reviewed the evidence advanced in support of the plaintiffs' claim that the transfer of these assets from DEPCO to the defendant was invalid because DEPCO rejected a higher bid. As a consequence, according to the plaintiffs, the defendant does not equitably succeed to DEPCO's rights with respect to these assets. The Court is satisfied that the plaintiffs will not prevail on the merits on the issue of improprieties in the transfer from DEPCO to the defendant. Nor will the plaintiffs succeed in its argument that any such impropriety, even if proved, deprives the defendant of its right to succeed to DEPCO's power to foreclose this mortgage.
Most of the argument in this case has swirled around the question of whether or not the plaintiffs may legally assert their claim against the defendant, whether denominated the affirmative defense of recoupment or a counterclaim in set-off or as an equitable ground to avert enforcement of the mortgage by foreclosure. Counsel have gone to great lengths to educate the Court with respect to the "D'Doench Duhme doctrine", the Federal holder-in-due-course doctrine, the applicability of 12 U.S.C. § 1823(e), and the pertinency of several informative decisions of the Courts of the United States. For all this advocacy effort the Court is grateful. To a certain extent those doctrines and decisions inform this Court's decision in this case. This Court concludes that, however informative and enlightening the Federal statutes and cases may be, decision in this case rests on a statute, specifically enacted to address the very questions before the Court.
General Laws 1956 (1993 Reenactment) § 42-116-6(b), as enacted by P.L. 1991, ch. 3, section 4 ("The Rhode Island Depositors Economic Protection Act", hereinafter simply "the DEPCO Act") provides:
 In addition to the powers hereinbefore enumerated, except to the extent inconsistent with any specific provision of this chapter, the corporation (DEPCO) shall have power:
 * * *
 "In connection with the acquisition of all or any portion of the assets of an eligible institution, to assume all, none or any portion of the liabilities, including deposit liabilities, of an eligible institution at such terms and in such manner as the corporation shall deem advisable; provided, however, that the corporation shall be responsible and liable only for those liabilities specifically assumed and shall bear no responsibility or liability for any other debts or liabilities of the eligible institution;"
The record is clear that Marquette was "an eligible institution." There is no question that DEPCO acquired the plaintiffs' indebtedness, note, mortgage, guaranties and other loan documents as part of the assets of Marquette. The record is equally clear that DEPCO did not specifically assume Marquette's liability, if any, for damages to these plaintiffs by reason of Marquette's breach, if any, of its loan agreement with these plaintiffs. The Court rejects any argument that the plaintiffs' claim is not a claim of liability of Marquette within the plain language of the statute.
Whether or not this section is a State codification of the Federal holder-in-due-course doctrine, adopted for Federal bank liquidators, is immaterial. By the plainest use of the English language it applies to DEPCO's situation in this case. The questions of whether or not to extend the D'Doench Duhme[1]
doctrine or to follow Federal precedent to apply some holder-in-due-course classification[2] to DEPCO are moot. The General Assembly has decided the issue by straight-forward, clearly understandable language which defies judicial construction. This Court's Order of May 22, 1992 simply follows the statutory mandate, as it must. See Rhode Island DepositorsEconomic Protection Corp. v. Phillips, 643 A.2d 215, 216 (R.I. 1994).[3]
The plaintiffs' argument that its claim against Marquette is asserted in recoupment as an affirmative defense and not as a counterclaim in set-off does not avail to relieve them from the bar imposed by § 42-116-6(b). Whether asserted as an affirmative defense or a counterclaim the plaintiffs' claim is one of Marquette's liability to it for damages. It is not a "pure" defense to the claim of Marquette against the plaintiffs, like forgery, fraud in the execution, payment in full, for example, which would, if proved at all, show that there was in fact or law no claim at all validly existing when Marquette's interest was transferred by law. The defense of recoupment must acknowledge that Marquette had a valid claim at the time its interest was transferred to the receiver. The "defense" of recoupment goes only to the amount of damages which can be assessed against a defendant in a contract action. See Villa v. Hedge, supra.
The plaintiffs' argument that under Abedon v. ProvidenceRedevelopment Agency, 115 R.I. 512, 348 A.2d 720 (1975) and Brillv. Citizens Trust Company, 492 A.2d 1215 (R.I. 1985) a receiver may be required to set off a creditor's matured claim against the insolvent's claim, is beside the point. Section 42-116-6(b) does not apply in an ordinary corporate receivership.
The plaintiffs' argument that § 42-116-6(b) somehow conflicts with § 19-15-7(c) arises from a mis-application of § 19-15-7(c).
That section deals with the claims against a receiver by creditors of an insolvent financial institution who are entitled to a security interest in the assets of that institution. It may be that the plaintiffs' claim against the receiver is a secured claim to the extent of their rights of setoff, as may be determined at the conclusion of litigation to establish that setoff. It is nonetheless still a claim, which did not follow the asset to DEPCO under § 42-116-6(b) and pursuant to the final, unappealled Order of this Court in the receivership proceeding.
The plaintiffs' claim, of course, is not extinguished, as it would be, for example, if Marquette's indebtedness had been discharged in bankruptcy. Their claim in the receivership remains viable in the event Marquette's assets are ever found to exceed its priority liabilities, however unlikely. See Phillips, Id.
The plaintiffs' argument that, even if DEPCO can acquire assets of a failed institution free from liabilities to the obligors on those assets, it cannot transfer those assets with such immunity defies logic and common sense, as well as DEPCO's statutory mission. What use could there be in DEPCO's acquiring those assets if it could not dispose of them? Particularly, non-performing mortgage loans like the ones in this lawsuit?
The General Assembly expressly found in § 42-116-2(c) that:
 "It is hereby further found that the interests of the citizens of the state may be protected best by the establishment of a corporation to purchase certain assets of the financial institutions, the consideration for the purchases to include the payment to the depositors of the institutions certain amounts in respect of their deposit liabilities upon such terms and conditions as the corporation shall deem advisable."
If DEPCO cannot sell the "certain assets" it purchases from the insolvent financial institutions free from claims against those institutions, which contributed to their insolvency in the first place, part of DEPCO's utility will obviously be lost. To that extent the "interests of the citizens of the state" will not be "protected best by the establishment of" DEPCO. As the plaintiffs themselves point out, § 42-116-2(e) requires DEPCO to "Maximize the return from the sale or other disposition of the assets" it acquires. DEPCO's inability to sell its acquired assets free from liabilities would not serve its purpose to maximize its returns.
Finally, the plaintiffs undertake the heavy burden of provingbeyond a reasonable doubt that § 42-116-6(b) is unconstitutional.City of Pawtucket v. Sundlun, 662 A.2d 40, 45 (R.I. 1995). All enactments of the General Assembly enjoy a presumption of constitutionality. Rhode Island Depositors Economic ProtectionCorp. v. Brown, 659 A.2d 95, 100, (R.I. 1995), cert. den. sub nom. Ernst Young v. Rhode Island Depositors Economic ProtectionCorp., ___ U.S. ___, 116 S.Ct. 476, 133 L.Ed.2d 405 (1995).
The DEPCO act has been repeatedly held not to violate the contracts clause of the Rhode Island and United States Constitution. Rhode Island Depositors Economic Protection Corp.v. Brown, supra. Although this particular section has not been the subject of constitutional scrutiny by our Supreme Court, this Court is satisfied that this section is reasonably necessary for the entire DEPCO Act to serve its constitutionally justified legitimate public purpose of returning funds to deposit creditors and eventually to the Rhode Island economy. Section 42-116-6(b)
serves a legitimate function by enhancing the revenues from which DEPCO can discharge its obligations to the public which ultimately funds the short-fall in assets to pay depositors created by the insolvency of entities like Marquette. See §42-116-13 (authorizing DEPCO to issue bonds secured by a special revenue fund supported by sales and use tax collections under §42-116-31). To the extent the sale of assets unfettered by claims like that of these plaintiffs reduces the short-fall created by payment of depositor liabilities the less the burden may be on the public funders of DEPCO's bonds. Rhode Island DepositorsEconomic Protection Corporation v. Brown, 659 A.2d, at 104.
The plaintiffs' arguments that the section violates their right to equal protection and deprives them of property without due process of law fail for the same reason. The immunizing of DEPCO from claims like those of these plaintiffs rationally addresses a legitimate state interest, the same interest which permits the state to impair, if it does, any obligation arising out of the plaintiffs' contracts with Marquette. The fact that the crisis which the DEPCO Act was designed to address has passed, thanks to that very Act, can scarcely be any reason now to invalidate any provision of the Act during the "clean-up" phase of its operation. Significantly, the plaintiffs are not left remediless, if they are correct that DEPCO has taken their "property" without just compensation in violation of both constitutions, since they have not made DEPCO a party to this litigation. DEPCO has sought a re-assignment to it of any deficiency following a foreclosure. As a consequence, they can, if they wish, pursue that claim, if it has any merit, against DEPCO as well as the receiver, since that particular claim is not a claim of liability of Marquette barred by the section, but a claim against DEPCO itself.
The plaintiffs' contention that § 42-116-6(b) violatesArticle 1, Section 5 of the Constitution of Rhode Island, while innovative, is also utterly without merit. They have an ancient, well-established remedy at law for any wrong they can prove they have sustained. They have a claim against the receiver. They may, however unlikely of success, have a direct claim against DEPCO. Finally, there may also, however equally unlikely, be a remedy in damages at law against this defendant. Since, at this stage, the Court does not need to resolve these potentialities, but needs only to decide whether or not the extraordinary relief of preliminary injunction is justified, it is clear that the plaintiffs are unlikely to prevail on the merits of their claim for a permanent injunction because of the unconstitutionality of§ 42-116-6(b).
Accordingly, the application for preliminary injunction is denied. The temporary restraining order heretofore entered is vacated. The defendant will present a form of Order for entry on five days notice to the plaintiffs.
[1] D'Doench, Duhme Co. v. Federal Deposit Insurance Corp.,315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).
[2] See, e.g., Federal Savings Loan Insurance Corp. v.Cribbs, 918 F.2d 557, 559 (5th cir. 1990).
[3] The doctrine codified by § 42-116-6(b) has been aptly described by learned counsel as the "Separation Doctrine", in Maggiacomo and Totten, DEPCO Defenses — There are Some!, R.I. Bar Journal, Feb. 1996, at 7-12. While this Court disagrees with the conclusions of the authors with regard to the failure to fund defense, the value of the article cannot be denied.